973 P.2d 1225 (1999)
PEOPLE of the State of Colorado, Plaintiff-Appellant,
v.
David Richard BAER, Defendant-Appellee.
No. 97SA426.
Supreme Court of Colorado, En Banc.
January 25, 1999.
*1227 Paul R. McLimans, District Attorney, Bonnie S. Roesink, Deputy District Attorney, Laurie A. Booras, Special Deputy District Attorney, Criminal Enforcement Section, Denver, for Plaintiff-Appellant.
David F. Vela, Colorado State Public Defender, Joan E. Mounteer, Deputy State Public Defender, Denver, for Defendant-Appellee.
Justice MARTINEZ delivered the Opinion of the Court.
The People appeal an order entered by the Moffat County District Court dismissing the case against David Richard Baer. The People charged Baer with two counts of harassment by stalking in violation of section 18-9-111(4)(a)(II), 6 C.R.S. (1998). The trial court dismissed the charges because it found the statute unconstitutionally overbroad and unconstitutionally vague. We conclude that section 18-9-111(4)(a)(II) is constitutional both on its face and as applied to Baer's alleged conduct. Accordingly, we reverse the judgment of the trial court and remand the case for further proceedings.

I.
The charges against Baer stem from his alleged contact with Darlene and Allen Scheller in December of 1996. Prior to this time and prior to her marriage to Mr. Scheller, Mrs. Scheller was involved in a relationship with Baer while residing in California. This relationship resulted in a son. Baer and Mrs. Scheller never married and, after the relationship ended, Mrs. Scheller moved to Moffat County, Colorado. During the period relevant to this case, she resided there with her son and her husband. There are no custody orders or agreements regarding the child.
According to the People, on or between December 3, 1996 and December 12, 1996, Baer committed harassment by stalking through his repeated communications with the Schellers. Although the People's complaint does not specify the episodes forming the basis for the charges, the affidavit supporting the arrest warrant sets forth many details. The allegations in the affidavit are summarized as follows. Baer telephoned the Schellers at least seven times during the ten days relevant to the complaint. On December 3, 1996, Baer called Mrs. Scheller and threatened to kill her and her husband if she did not tell Baer the whereabouts of his son. On December 4, 1996, Baer called Mrs. Scheller twice: the first time merely laughing before she hung up, and the second time indicating that he was half-way to Colorado and he was going to kill her.
Baer made three calls on December 6, 1996. In the first, he asked Mrs. Scheller if she were "ready to die." In the second call, Baer stated that, if Mrs. Scheller did not return to California within two weeks, he would have her "brought back on criminal charges." The third call was made to Mr. Scheller's place of employment. Although Mr. Scheller refused to take the call, his employer reported that Baer claimed Mr. Scheller had kidnapped Baer's son and was holding him for ransom. Mr. Scheller's employer terminated the call after Baer made vulgar and threatening remarks. Finally, the affidavit asserts that, on December 12, 1996, Baer left the following message on the Schellers' answering machine:
You want to play games and be a con artist and keep me from my son. You have a major fucking war on your hands. I've been fair to you. No more fucking niceguy. All I care about living for is to fuck you over, you fat fucking ugly cunt and Allen too. You both want to play games with me? All fucking things cease as of today. I care nothing else about in life, but to get both of you mother fuckers. And believe me the shit is going to happen. Have a nice fucking life.
Baer was subsequently arrested and charged with violating section 18-9-111(4)(a)(II). Section 18-9-111(4)(a) provides:
In addition to the circumstances described in subsection (1) of this section, a person *1228 commits harassment by stalking if directly or indirectly through another person such person knowingly:
...
(II) Makes a credible threat to another person and, in connection with such threat, repeatedly makes any form of communication with that person or a member of that person's immediate family, whether or not a conversation ensues.
For purposes of this section, a "credible threat" is defined as a "threat that would cause a reasonable person to be in fear for the person's life or safety or the safety of his or her immediate family[.]" § 18-9-111(4)(b)(I).[1] Section 18-9-111(4)(b)(III) states, "`In connection with' means acts occurring either before, during, or after the credible threat[.]"
Baer moved to dismiss the charges on the grounds that the statute is unconstitutionally overbroad and unconstitutional as applied to him. After a hearing, the trial court agreed and granted Baer's motion. The trial court's conclusion that the statute is overbroad was based primarily upon the definition of "in connection with" in section 18-9-111(4)(b)(III). Using this definition, the trial court found that a person violates the statute if the person makes a credible threat to another and, at any time, makes any form of communication with the recipient of the threat regardless of whether the communication is related to, a part of, or in furtherance of the credible threat. Thus, the court concluded that the statute reaches a substantial amount of constitutionally protected speech. The trial court also found the statute unconstitutional as applied to Baer's alleged conduct because the charges against him were based in part upon his protected communications regarding custody of his son.
Additionally, the trial court found the statute void for vagueness. Relying again upon the definition of "in connection with," the court found that ordinary persons cannot know what communications are proscribed because the statute "prohibits communications with the victim before a credible threat is made, whether or not the communication is related to the credible threat." The court also reasoned that, even if it construed the statute to reach only those communications related to, a part of, or in furtherance of the threat, the statute would still be unconstitutional because it does not contain a specific intent requirement. Consequently, the trial court found the statute void on its face.
The People appeal the trial court's order pursuant to section 16-12-102, 6 C.R.S. (1998), and section 13-4-102, 5 C.R.S. (1998). We reverse.

II.
This case calls upon us to examine section 18-9-111(4)(a)(II) for the first time. Because the resolution of this appeal largely depends upon the meaning of this statute, we first address the proper interpretation of section 18-9-111(4)(a)(II). See People v. Holmes, 959 P.2d 406, 410 (Colo.1998) (discussing operation of Contraband Statute before addressing its constitutionality). We then investigate whether the statute comports with constitutional norms.

A.
In interpreting a statute, we must ascertain the intent of the legislature. See Weld County Sch. Dist. RE-12 v. Bymer, 955 P.2d 550, 554 (Colo.1998). To this end, we afford the language of a statute its plain and ordinary meaning. See Christie v. Coors Transp. Co., 933 P.2d 1330, 1332 (Colo.1997). Where the statutory language leaves doubt as to its meaning, we may examine other sources of legislative intent, including the legislature's objective, the circumstances surrounding the enactment, and the consequences of a particular construction. See State Eng'r v. Castle Meadows, Inc., 856 P.2d 496, 504 (Colo.1993). With these guiding *1229 principles, we turn to section 18-9-111(4)(a)(II).
Under the statute, a person commits harassment by stalking if, directly or indirectly through another person, such person "makes a credible threat to another person and, in connection with such threat, repeatedly makes any form of communication with that person or a member of that person's immediate family." § 18-9-111(4)(a)(II) (emphasis added). Thus, in addition to the credible threat itself, only those repeated communications made "in connection with" the credible threat are implicated by this statute. Section 18-9-111(4)(b)(III) provides, "`In connection with' means acts occurring either before, during, or after the credible threat."
It must be acknowledged that subparagraphs (4)(a)(II) and (4)(b)(III), when considered together, cannot be read literally. To do so would result in the following ungrammatical and nonsensical pronouncement: a person commits harassment by stalking if the person knowingly "makes a credible threat to another person and, acts occurring either before, during, or after the credible threat, repeatedly makes any form of communication with that person." Hence, the language of the statute leaves some doubt as to its meaning.
Yet, the statutory language is not impenetrable; it lends itself to two clear alternatives. Under the first, one should simply ignore the words "acts occurring" in subparagraph (4)(b)(III). Thus, a person commits the offense if the person knowingly makes a credible threat to another person and before, during or after such threat, repeatedly makes any communication with that person. The trial court below adopted this construction.
Alternatively, one should interpret the word "means" in subparagraph (4)(b)(III) to denote "includes." Under this view, the requirement that the repeated communications be "in connection with" the credible threat remains, but the communications and the credible threat need not occur in any particular sequence (i.e., the connected communications can be made before, during or after the threat). For the reasons discussed below, we find this construction more consistent with legislative intent.
When the harassment by stalking statute was first enacted, the phrase "in connection with" occupied its present place in subparagraph (4)(a)(II), but the General Assembly offered no further explanation of the phrase. See ch. 76, sec. 1, § 18-9-111, 1992 Colo. Sess. Laws. 413, 413.[2] Thus, the General Assembly relied upon the commonly accepted meaning of "in connection with." See discussion infra Part II.B. Subparagraph (4)(b)(III) was added two years later, in 1994, as a part of House Bill 94-1045. See ch. 324, sec. 1, § 18-9-111, 1994 Colo. Sess. Laws 2018, 2019. According to the statutory interpretation urged by Baer and adopted by the trial court, the General Assembly intended in 1994 to abandon the commonly accepted meaning of "in connection with" in favor of its opposite meaning: "no connection whatsoever." We find no support for this unlikely conclusion.
Firstly, nothing in the legislative history of House Bill 94-1045 indicates that the General Assembly intended such a radical redefinition of "in connection with" (or, indeed, of the stalking statute itself). The legislature's retention of the phrase "in connection with" demonstrates instead that it continued to contemplate a relationship between the credible threat and the repeated communications. If the General Assembly wished to do away with this relationship requirement, it surely would not have retained the language "in connection with" such threat.
Secondly, the legislative history indicates that, in subparagraph (4)(b)(III), the General Assembly intended to emphasize that the credible threat and the communications connected to the threat need not occur in any particular order. In testimony before the *1230 House Judiciary Committee on House Bill 94-1045, witnesses spoke in favor of subparagraph (4)(b)(III) because it would alleviate the requirement, imposed by various trial courts, that the credible threat predate the connected communications. See Hearing on H. 94-1045 Before House Judiciary Committee, 59th Gen. Assembly, 2nd Reg. Sess. (Feb. 1, 1994). Although no legislator expressly echoed this interpretation, we find that the context of the hearing and of the statutory language make it probable that the General Assembly shared this view of subparagraph (4)(b)(III).
Consequently, we conclude that subparagraph (4)(b)(III) does not jettison the commonly understood meaning of "in connection with." To be convicted of harassment by stalking under section 18-9-111(4)(a)(II), therefore, a person must directly or indirectly through another person knowingly make a credible threat to another person and, in connection with such threat, repeatedly make any form of communication with the recipient of the threat. The repeated communications may occur before, during, or after the credible threat, but they must be connected to the threat. We now turn to the substance of this connection.

B.
We ordinarily interpret statutory words and phrases according to their commonly accepted meanings. See People v. Schuett, 833 P.2d 44, 47 (Colo.1992). The commonly understood meaning of "in connection with" contemplates a logical and contextual relationship or association exhibiting "coherence" or "continuity." See Webster's Third New International Dictionary 481 (1961). In other words, it means "to further, advance, promote, or share a continuity of purpose."[3]See generally People v. Bobo, 897 P.2d 909, 913 (Colo.App.1995) (noting "furtherance" means to help forward, advance or promote); State v. Bailey, 167 Ill.2d 210, 212 Ill.Dec. 608, 657 N.E.2d 953, 963 (1995) (interpreting "in furtherance of" in Illinois stalking statute as helping forward, promoting or advancing).
Therefore, in the context of section 18-9-111(4)(a)(II), the repeated communications must further, promote, or advance the credible threat. To the extent that the commonly accepted meaning suggests that the communications must be made after the threat, we expressly reject such a nuance as inconsistent with section 18-9-111(4)(b)(III).
Just as the existence of a credible threat is a question for the fact-finder, whether the repeated communications are "in connection with" the threat (as defined herein) is a matter of fact. Of course, both the content and the context of the communications will be relevant to this determination. See generally United States v. Khorrami, 895 F.2d 1186, 1192 (7th Cir.1990) (holding that what constitutes "true threat" under 18 U.S.C. § 876 (1994) depends upon context surrounding the language); People v. Janousek, 871 P.2d 1189, 1198 (Colo.1994) (Mullarkey, J., concurring) (explaining that whether statement is "true threat" depends upon context in which it was spoken).

III.
With the proper interpretation of section 18-9-111(4)(a)(II) in mind, we now examine the constitutional challenges to the statute raised by Baer and accepted by the trial court.

A.
In reviewing a statute, we presume that it comports with constitutional standards. See Holmes, 959 P.2d at 410. The party challenging a statute on constitutional grounds bears the burden of establishing the statute's unconstitutionality beyond a reasonable doubt. See Janousek, 871 P.2d at 1195. *1231 Baer contends that section 18-9-111(4)(a)(II) is unconstitutional on its face because it violates the free speech guarantees of the federal and state constitutions. See U.S. Const. amends. I, XIV; Colo. Const. art. II, § 10. Specifically, Baer claims that the statute is impermissibly overbroad because it burdens protected speech as well as unprotected speech.
As an initial matter, the People assert that Baer lacks standing to present his overbreadth claim because his purported speech is clearly not protected by the First Amendment. However, a party may challenge a law as overbroad regardless of whether that party's speech is constitutionally protected. See, e.g., Secretary of State of Maryland v. Munson Co., Inc., 467 U.S. 947, 956-57, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984); Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); Board of Educ. v. Wilder, 960 P.2d 695, 703 (Colo.1998). "Facial challenges to overly broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of society  to prevent the statute from chilling the First Amendment rights of other parties not before the court." Munson, 467 U.S. at 958, 104 S.Ct. 2839; see also Bolles v. People, 189 Colo. 394, 396, 541 P.2d 80, 82 (1975).
Moreover, one who asks a court to invalidate a statute as overbroad is asserting that no member of society, including persons whose speech is not protected, may be punished under a constitutionally invalid rule of law. See Massachusetts v. Oakes, 491 U.S. 576, 585-87, 109 S.Ct. 2633, 105 L.Ed.2d 493 (1989) (Scalia, J., writing for a majority of the Court on this point); 3 Ronald D. Rotunda, et. al., Treatise on Constitutional Law: Substance and Procedure § 20.8, at 30 (1986); Richard H. Fallon, Jr., Making Sense of Overbreadth, 100 Yale L.J. 853, 871 (1991). We therefore reject the People's argument, and proceed to address the merits of Baer's overbreadth claim.
A statute is overbroad if it sweeps so comprehensively as to include within its proscriptions a substantial amount of constitutionally protected speech. See Broadrick, 413 U.S. at 615, 93 S.Ct. 2908; Whimbush v. People, 869 P.2d 1245, 1247 (Colo.1994). The criterion of "substantial overbreadth" precludes a court from invalidating a statute on its face simply because of the possibility, however slight, that it might be applied in some unconstitutional manner:
[The substantial overbreadth criterion] is appropriate in cases where, despite some possibly impermissible application, the "remainder of the statute ... covers a whole range of easily identifiable and constitutionally proscribable ... conduct."
Munson, 467 U.S. at 964-65, 104 S.Ct. 2839 (quoting Parker v. Levy, 417 U.S. 733, 760, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1973)). Where a statute is not impermissibly overbroad, a challenger must show that the statute is unconstitutional as applied to his or her conduct. See Munson, 467 U.S. at 965, 104 S.Ct. 2839; New York v. Ferber, 458 U.S. 747, 774, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).
In the instant case, Baer's overbreadth claim, as well as the trial court's analysis, centers upon an erroneous interpretation of section 18-9-111(4)(a)(II). Baer maintains that, once a credible threat is made, the statute proscribes all other communications from the author of the threat to its recipient, regardless of whether the communications are related to the threat. Because this includes a substantial amount of protected speech, Baer concludes that the statute is overbroad. As we explained in Part II of this opinion, however, the statute is not so far-reaching. The statute reaches only those communications that further, promote, or advance a credible threat. See discussion supra Part II.B.
Properly construed, the statute does not burden a substantial amount of protected speech. It is well-settled that a true threat (i.e., one which a reasonable person would foresee would be interpreted by the recipient as a serious threat to inflict death or bodily injury) is not protected by the First Amendment. See, e.g., Madsen v. Women's Health Ctr., 512 U.S. 753, 773-74, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994); R.A.V. v. City of St. Paul, 505 U.S. 377, 388, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992); Watts v. United States, 394 U.S. 705, 707-08, 89 S.Ct. 1399, 22 *1232 L.Ed.2d 664 (1969); United States v. Whiffen, 121 F.3d 18, 22 (1st Cir.1997); Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 371-72 (9th Cir.1996); United States v. Dinwiddie, 76 F.3d 913, 924 (8th Cir.1996); Khorrami, 895 F.2d at 1192; Janousek, 871 P.2d at 1198 (Mullarkey, J., concurring). Thus, by burdening only those communications furthering, promoting, or advancing an expressed credible threat,[4] section 18-9-111(4)(a)(II) does not reach protected conduct.
We find support for this conclusion in the decisions of other courts addressing the propriety of stalking statutes. At least forty-eight states have enacted some variation of a stalking statute. See Luplow v. State, 897 P.2d 463, 467 (Wyo.1995); M. Katherine Boychuk, Are Stalking Laws Unconstitutionally Vague or Overbroad?, 88 Nw. U.L.Rev. 769, 769 (1994). Although the statutory language is not identical in every case, the majority of those courts that have considered the issue have upheld stalking statutes against overbreadth attacks. See Luplow, 897 P.2d at 467 (and cases cited therein).
For example, the Supreme Court of Illinois upheld a stalking statute similar to Colorado's. See Bailey, 212 Ill.Dec. 608, 657 N.E.2d at 961-62. The Illinois statute provided, inter alia, that the state prove a defendant engaged in certain conduct "in furtherance of" a threat. Id. 212 Ill.Dec. 608, 657 N.E.2d at 961. The court concluded that the statute did not reach constitutionally protected speech:
While the offense of stalking does contain an element of speech, this speech does not fall within the protections of the first amendment. "Where speech is an integral part of unlawful conduct, it has no constitutional protection."
Id. 212 Ill.Dec. 608, 657 N.E.2d at 962 (quoting Chicago Real Estate Bd. v. City of Chicago, 36 Ill.2d 530, 224 N.E.2d 793 (1967)). Thus, where a stalking statute requires a nexus between the threat and the accompanying physical or verbal acts (as section 18-9-111(4)(a)(II) does), the statute is much more likely to survive a constitutional challenge. See, e.g., Long v. State, 931 S.W.2d 285, 291 (Tex.Crim.App.1996) (invalidating statute after explaining that, unlike other statutes, Texas stalking law lacked nexus requirement); Bailey, 212 Ill.Dec. 608, 657 N.E.2d at 962.
The crux of the overbreadth arguments presented by Baer and accepted by the trial court rests upon the faulty premise that section 18-9-111(4)(a)(II) requires no nexus between the credible threat and the other communications with the threat's recipient. Accordingly, the arguments are unpersuasive.

B.
The trial court below also opined that "[e]ven if I construe the statute to prohibit only communications in relation to, as part of, in the course of, or in furtherance of a credible threat, it is still unconstitutionally overbroad." Closely related to this conclusion is the trial court's finding that section 18-9-111(4)(a)(II) is unconstitutional as applied to Baer's alleged conduct. As support for both conclusions, the trial court explained that the statute reaches Baer's "angry," but constitutionally "legitimate," conversations with Mrs. Scheller regarding the custody of his son occurring before the credible threat. According to the court, the statute would reach these communications because they, like the credible threat, "relate to Defendant's belief that she was denying him access to his child."
Once again, these conclusions are founded upon a false premise. The statute does not reach Baer's earlier conversations with Mrs. Scheller if the only relationship between them and the credible threat is the common theme of Baer's frustration over access to his son. To come within the ambit of the statute, the conversations must further, promote, or advance the threat made against the lives of Mrs. and Mr. Scheller. Hence, the statute, properly construed, does not burden a substantial amount of protected speech, and is not overbroad.
*1233 Furthermore, according to the allegations of the affidavit underlying the arrest warrant, Baer made a credible threat on December 3, 1996. Under the terms of the complaint, communications made before this date are not a basis of the charges against Baer. Where, as here, a case is dismissed before trial (and thus before the evidence is presented and the facts are known), it is difficult to assess the merits of an "as applied" constitutional claim. Cf. Bolles, 189 Colo. at 396, 541 P.2d at 81-82. Given the limited record before us, therefore, we cannot conclude that section 18-9-111(4)(a)(II) has been applied in this case to proscribe protected speech. Accordingly, we reject this claim as well.

C.
Baer asserts, and the trial court found, that section 18-9-111(4)(a)(II) is impermissibly vague in violation of his right to due process. A law is void for vagueness where its prohibitions are not clearly defined. See Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); Rickstrew v. People, 822 P.2d 505, 506-07 (Colo.1991). Vague laws offend due process because they (1) fail to give fair notice of the conduct prohibited, and (2) do not supply adequate standards for those who apply them in order to prevent arbitrary and discriminatory enforcement. See Holmes, 959 P.2d at 414.
Where, as here, a statute does not burden protected speech, the constitution permits a greater degree of vagueness. See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495-96, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); Wilder, 960 P.2d at 704. In such a case, a court should sustain a facial challenge only where the "enactment is impermissibly vague in all of its applications." Flipside, 455 U.S. at 495-96, 102 S.Ct. 1186. If the statute survives a facial challenge, a litigant may succeed on a vagueness claim only by demonstrating that the statute is impermissibly vague as applied to him or her. See id.; Wilder, 960 P.2d at 704.
Relying upon its expansive and erroneous interpretation of "in connection with," the trial court found section 18-9-111(4)(a)(II) vague on its face. Because, under this view, any communications with the victim before a credible threat is made are proscribed, regardless of whether the communications are related to the threat, the court concluded that "persons of ordinary intelligence can not know what communications may subject them to criminal liability in the future."[5]
Construed properly, section 18-9-111(4)(a)(II) does not suffer from these purported problems of vagueness. It proscribes only those repeated communications made "in connection with" the credible threat (i.e., those that further, promote or advance a credible threat). A person of ordinary intelligence can know what conduct is proscribed, especially considering that the General Assembly has relied upon the commonly accepted meaning of "in connection with."
The trial court also found that, even if it employed the commonly accepted meaning of "in connection with," the statute is impermissibly vague because the statute does not prescribe a specific intent requirement. The statute requires only that one "knowingly" communicate with the threat's recipient. § 18-9-111(4)(a). While it is true that a specific intent requirement may sometimes be necessary to save a statute from a vagueness challenge, see People v. Smith, 862 P.2d 939, 942 (Colo.1993), that is not the case here. Because the analysis of whether a credible threat has occurred is subject to an objective "reasonable person" standard, see § 18-9-111(4)(b)(I), the statute takes into consideration the context in which the credible threat and the related communications were made. This avoids the risk that the statute will reach otherwise innocuous statements *1234 merely because they are directed at an unusually sensitive listener. Cf. Whiffen, 121 F.3d at 21 (finding the "true threat" provision of § 18 U.S.C. § 875(c) subject to a general intent requirement).
This is plainly not a case in which "no standard of conduct is specified at all." Coates v. City of Cincinnati, 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). We find that section 18-9-111(4)(a)(II) is not impermissibly vague on its face.
"A plaintiff who engages in some conduct that is clearly proscribed by the statute cannot complain of the vagueness of the law as applied to the conduct of others." Flipside, 455 U.S. at 495-96, 102 S.Ct. 1186. We must therefore examine whether Baer's alleged conduct is clearly proscribed by section 18-9-111(4)(a)(II) (i.e., whether the statute is vague as applied to Baer). See Wilder, 960 P.2d at 704. According to the allegations of the affidavit, Baer made multiple threats against the lives of the Schellers, and also made repeated communications promoting these threats (e.g., calling to say he was half-way to Colorado in order to kill Mrs. Scheller, calling soon thereafter to ask whether she were "ready to die," and then promising to make "war" with and "get both of" the Schellers). Sorting which communications constitute a "credible threat" and which comprise the communications "in connection with" the threat is within the province of the fact-finder. In any event, persons of ordinary intelligence do not have to guess as to whether the statute applies to this alleged conduct.
In fact, Baer does not dispute that these actions are clearly covered by section 18-9-111(4)(a)(II). Rather than assert a true "as applied" vagueness challenge, he merely recasts his previous argument that at least some of his conduct is constitutionally protected. For the reasons discussed in Part III.B of this opinion, we reject this argument, and conclude that section 18-9-111(4)(a)(II) is not impermissibly vague as applied to Baer.

IV.
We find section 18-9-111(4)(a)(II) constitutional on its face and as applied to Baer's alleged conduct. Therefore, we reverse the judgment of the trial court, and remand the case for further proceedings consistent with this opinion.
Justice KOURLIS does not participate.
NOTES
[1] The definition of "credible threat" has been amended since Baer was charged. The definition now reads, "[A] threat or physical action that would cause a reasonable person to be in fear for the person's life or safety or the safety of his or her immediate family[.]" Ch. 264, sec. 4, § 18-9-111, 1997 Colo. Sess. Laws 1539, 1540 (emphasis added). This amendment became effective July 31, 1997. In this case, we consider only the statutes in effect at the time of Baer's alleged conduct.
[2] The phrase is also found in subparagraph (4)(a)(I), which provides that a person commits harassment by stalking if the person directly or indirectly:

Makes a credible threat to another person, and in connection with such threat, repeatedly follows that person or a member of that person's immediate family.
§ 18-9-111(4)(a)(I), 6 C.R.S. (1998).
[3] The trial court below found that the commonly accepted meaning of "in connection with" includes "in relation to, as part of, in the course of, or in furtherance of." In large part, this conclusion is identical to our own, although we believe the phrase "in relation to" fails to provide a sufficient nexus between the communications and the credible threat. As the trial court noted, the requirement that the communications merely be "in relation to" the threat may lead to the absurd result that one who apologizes for or retracts a credible threat is guilty of violating the statute.
[4] To reiterate, a credible threat is defined as "a threat that would cause a reasonable person to be in fear for the person's life or the safety of his or her immediate family[.]" § 18-9-111(4)(b)(I).
[5] Given the trial court's understanding of the statute, its vagueness finding appears to be, in fact, another expression of its overbreadth conclusion (i.e., the problem would seem to be too much notice, rather than too little). Indeed, in the First Amendment context, the vagueness doctrine has been viewed as a subset of the overbreadth doctrine because vague statutes, by not stating clearly what is proscribed, create the risk that ordinary persons will refrain from constitutionally protected speech for fear of prosecution. See Fallon, Making Sense of Overbreadth, 100 Yale L.J. at 903-07.