The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

**Giel BOLES, Defendant–Appellant.**

**No. 10CA1264.**

Colorado Court of Appeals.

Sept. 1, 2011.

**58**

John W. Suthers, Attorney General, Corelle M. Spettigue, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Bethart Law Firm, L.L.C., Andrew T. Bethart, Colorado Springs, Colorado, for Defendant–Appellant.

Opinion by Judge PLANK.*

Defendant, Giel Boles, appeals the judgments of conviction entered on jury verdicts finding him guilty of criminal attempt to commit Internet sexual exploitation of a child, Internet luring of a child, and obscenity. Specifically, he contends that the Internet luring and obscenity statutes under which he was convicted are unconstitutional, and that there was insufficient evidence to sustain the criminal attempt conviction. We conclude that the challenged statutes are constitutional and that the evidence at trial was sufficient. Therefore, we affirm.

In December 2008, defendant, while online in an adult Internet chat room and using a screen name, initiated a conversation with an undercover detective posing as a fourteen-year-old girl named "Trista." For over a

month, defendant and "Trista" had numerous online, phone, and text conversations, the majority of which were sexual in nature.

Over the course of these conversations, defendant sent "Trista" a sexual joke with a pornographic image attached, and "Trista" told defendant her supposed age several times. In later conversations, defendant asked "Trista" if she wanted to meet him in person and they discussed how she would travel from her supposed home in Denver to Colorado Springs, where defendant lived.

By verifying Internet and phone records, the detective identified defendant as the person with whom she had been conversing, and he was ultimately charged with the above-mentioned offenses. Before trial, defendant moved to dismiss the Internet luring and obscenity charges on the grounds that the statutes defining the offenses were unconstitutional, for the same reasons he argues on appeal. After a hearing, the trial court denied the motions in two written orders.

At trial, the detective who posed as "Trista" testified in detail as to the content of her exchanges with defendant, and the online, text, and phone conversations were admitted into evidence.

Defendant testified that he thought his interaction with "Trista" was a "role-play," that is, she was only pretending to be a fourteen-year-old girl but, in reality, was an adult. He also testified that he never wanted to meet her but, rather, those conversations were part of the role-play. Defendant also presented a witness, qualified as an expert in human sexual relations, who testified that, in his opinion, the transcripts of the conversations were consistent with "fantasy role play."

### I. Constitutionality of Internet Luring Statute

Defendant challenges the constitutionality of the Internet luring statute, section 18–3–306, C.R.S.2010 [1], on several grounds. We conclude that the statute is constitutional.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2010.

1. Defendant was originally charged under a version of section 18–3–306 which was subsequently amended. Ch. 383, sec. 8, § 18–3–306(1), 2007 Colo. Sess. Laws 1688 (effective July 1, 2007);

An actor commits Internet luring of a child if

> the actor knowingly communicates over a computer or computer network, telephone network, or data network or by a text message or instant message to a person who the actor knows or believes to be under fifteen years of age and, in that communication or in any subsequent communication by computer, computer network, telephone network, data network, text message, or instant message, describes explicit sexual conduct ..., and, in connection with that description, makes a statement persuading or inviting the person to meet the actor for any purpose, and the actor is more than four years older than the person or than the age the actor believes the person to be.

§ 18–3–306(1).

"Explicit sexual conduct" is defined as "sexual intercourse, erotic fondling, erotic nudity, masturbation, sadomasochism, or sexual excitement." § 18–6–403(2)(e), C.R.S. 2010.

▇▇▇ We review the constitutionality of statutes de novo. *Hinojos–Mendoza v. People,* 169 P.3d 662, 668 (Colo.2007). Because statutes are presumed to be constitutional, the party challenging the facial constitutionality of a statute has the burden of showing the statute is unconstitutional beyond a reasonable doubt. *Id.*

### A. Overbreadth Challenge

Defendant first contends the Internet luring statute is facially overbroad and substantially chills constitutionally protected speech. We are not persuaded.

▇▇▇ Generally, a facial challenge can succeed only if the complaining party shows that the statute is unconstitutional in all its applications. *Dallman v. Ritter,* 225 P.3d 610, 625 (Colo.2010). In a facial challenge asserting that a statute is unconstitutional under the First Amendment, however, a showing that the law is overbroad may be sufficient to invalidate its enforcement. *Id.*

▇▇▇ Nevertheless, a statute is unconstitutionally overbroad only if it includes within its proscriptions a substantial amount of constitutionally protected speech. *People v. Hickman,* 988 P.2d 628, 635 (Colo.1999). "The criterion of 'substantial overbreadth' precludes a court from invalidating a statute on its face simply because of the possibility, however slight, that it might be applied in some unconstitutional manner." *Id.* (quoting *People v. Baer,* 973 P.2d 1225, 1231 (Colo. 1999)). If a statute meets this description, it must be invalidated unless the court can supply a limiting construction or partial invalidation that narrows the scope of the statute to constitutionally acceptable applications. *Id.*

Because defendant concedes that "Colorado has a compelling interest in protecting the physical and psychological well-being of minors," our overbreadth analysis involves two questions: first, whether the statute encompasses constitutionally protected communications; and second, if the statute extends to such communications, whether it impacts a "substantial" amount of protected communication such that it is unconstitutional, or whether unconstitutional applications of it should be cured on a case-by-case basis. *Hickman,* 988 P.2d at 636.

Defendant primarily relies on *Reno v. American Civil Liberties Union,* 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997), to argue that, for various reasons[2], the luring statute regulates constitutionally protected speech. In *Reno,* the Supreme Court held that as applied to noncommercial speech, two provisions of the Communications Decency Act of 1996, as amended, 47 U.S.C. § 223(a) & (d), which prohibited the knowing transmission of obscene, indecent,

---

*see* Ch. 341, sec. 2, § 18–3–306(1), 2009 Colo. Sess. Laws 1792–93 (amendment effective July 1, 2009). However, because defendant's constitutional challenge pertains to parts of the statute that were not altered by the amendment, we refer to the current version of the statute.

**2.** These include that the statute does not attempt to limit the descriptions of explicit conduct to obscenity; prohibits discussion of numerous legitimate health-related communications that involve sexual conduct; and is unconcerned as to whether the invitation to meet is for a nefarious purpose.

or patently offensive messages, were overbroad because they "effectively suppresse[d] a large amount of speech that adults have a constitutional right to receive and to address to one another." 521 U.S. at 874, 117 S.Ct. at 2346.

■ In answering the first question, we conclude that the statute encompasses constitutionally protected communication, for two reasons:

- The prohibition is not content neutral because it applies only if a communication describes "explicit sexual conduct." *See, e.g., Denver Publ'g Co. v. City of Aurora*, 896 P.2d 306, 318 (Colo.1995) ("a presumption of constitutionality attaches to content-neutral legislation").

- The definition of "explicit conduct," while narrow, is broader than the definition of obscenity as an exception to constitutionally protected speech. *See People v. Ford*, 773 P.2d 1059, 1063 n. 2 (Colo. 1989) (citing "[t]he three-part test articulated in *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973)").

Our conclusion is not altered by cases such as *People v. Foley*, 94 N.Y.2d 668, 709 N.Y.S.2d 467, 731 N.E.2d 123, 127 (2000), which rejected an overbreadth challenge to a New York statute that made it a crime to send communications depicting "actual or simulated nudity, sexual conduct or sadomasochistic abuse" to a minor and then, by means of that communication, "importune[ ], invite[ ] or induce[ ]" the minor to engage in sexual contact. N.Y. Penal Law § 235.22. The court explained that, unlike the statute in *Reno*, the New York law was "not directed at the mere transmission of certain types of communication over the Internet." *Foley*, 709 N.Y.S.2d 467, 731 N.E.2d at 129. Rather, the luring aspect of the statute targeted "acts of communication ... not ... the content of one's views" and identified "forms of conduct which may provide a predicate for criminal liability." *Id.*[3]

Here, because section 18–3–306(1) requires an actor, in connection with a description of explicit sexual conduct, to make a statement "persuading or inviting" the minor to meet, it does not authorize criminal charges based solely on speech. *Cf. State v. Robins*, 253 Wis.2d 298, 646 N.W.2d 287, 297 (2002) ("That an act of child enticement is initiated or carried out in part by means of language does not make the child enticement statute susceptible of First Amendment scrutiny."). However, the statutes at issue in these cases require that the minor be "lured" to engage in unlawful conduct. In contrast, the luring element of section 18–3–306(1) is much broader: "to meet the actor for any purpose." The Attorney General has not cited, nor are we aware of, any case upholding such a statute where the proscribed conduct begins with a communication protected by the First Amendment and does not include any conduct that is itself unlawful.

Nevertheless, in answering the second question, we further conclude that defendant has failed to show section 18–3–306(1) suppresses "a large amount of speech" subject to constitutional protection. *Reno*, 521 U.S. at 874, 117 S.Ct. at 2332. Because the statute at issue in *Reno* did not involve a luring element, the Supreme Court's analysis dealt only with the right to transmit obscene or indecent communications to any recipient under eighteen years of age. But in determin-

---

3. *See State v. Backlund*, 672 N.W.2d 431, 442 (N.D.2003) (luring statute was not a content-based restriction on free speech because it did not authorize a criminal charge to be based on "pure" speech but rather was premised on criminalizing "luring" conduct); *see also People v. Cervi*, 270 Mich.App. 603, 717 N.W.2d 356, 366 (2006) (statute that criminalized use of the Internet or a computer to communicate with any person for the purpose of committing several enumerated crimes did not impermissibly burden free speech because it did not proscribe words alone, but rather communication combined with the specific intent to commit particular crimes); *cf. United States v. Bailey*, 228 F.3d 637, 639 (6th Cir.2000) ("[a] [d]efendant simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sex acts"); *People v. Arndt*, 351 Ill.App.3d 505, 286 Ill.Dec. 754, 814 N.E.2d 980, 994 (2004) ("[w]here speech is an integral part of unlawful conduct, it has no constitutional protection") (quoting *People v. Bailey*, 167 Ill.2d 210, 212 Ill.Dec. 608, 657 N.E.2d 953, 961–62 (1995)); *Backlund*, 672 N.W.2d at 440 (freedom of speech does not extend to speech used as an integral part of conduct in violation of a valid criminal statute).

ing whether the impact of section 18–3–306(1) on speech is more than "slight," *Hickman*, 988 P.2d at 635, we consider only those circumstances where the person initiating the communication also "makes a statement persuading or inviting" the recipient to meet. Thus, while defendant correctly points out "that serious discussions about birth control practices, homosexuality, or the consequences of prison rape" could include descriptions of "explicit sexual conduct" within the statutory definition, he does not explain why such discussions would be accompanied, with any frequency, by an invitation to meet.

■ Defendant's suggestion of criminal culpability for "[a] father who sends his 14–year–old son information on birth control . . . and contemporaneously invite[s] his son, in connection with the communication, for a follow-up discussion" ignores the limitation "in connection with that description." In this example, the primary purpose for the communication is providing "information on birth control." Any description of "explicit" sexual conduct would be incidental to that purpose. Thus, the invitation "for a follow-up discussion" would not be "in connection with" the description but, rather, would be in furtherance of the broader purpose. Hence, defendant's hypothetical father would not risk "a lengthy prison sentence."

This interpretation implements the definition of "in connection with," in section 18–3–306(4), to "further, advance, promote, or have a continuity of purpose." It also reflects the principle of First Amendment law that a statute which may encroach on protected speech can be saved by construing it narrowly. *Hickman*, 988 P.2d at 635.

Accordingly, we conclude that section 18–3–306 is not overbroad.[4]

### B. "As Applied" Challenge

We also reject defendant's argument that section 18–3–306 is overbroad as applied to

him because his statements to "Trista" were not obscene.

■ Where a statute is not impermissibly overbroad, a challenger must show that the statute is unconstitutional as applied to the challenger's conduct. *People v. Campbell*, 174 P.3d 860, 866 (Colo.App.2007). "[A]n as-applied challenge alleges that the statute is unconstitutional as to the specific circumstances under which a defendant acted." *People v. Gardner*, 250 P.3d 1262, 1268 (Colo.App.2010) (quoting *People v. Ford*, 232 P.3d 260, 263 (Colo.App.2009)).

The record is replete with evidence that defendant, via computer messages, described explicit sexual conduct to "Trista." Moreover, the content of these communications was obscene.[5] *See New York v. Ferber*, 458 U.S. 747, 764, 102 S.Ct. 3348, 3358, 73 L.Ed.2d 1113 (1982) (in the context of sexual exploitation of children, the *Miller* test is adjusted in the following respects: "A trier of fact need not find that the material appeals to the prurient interest of the average person; it is not required that sexual conduct portrayed be done so in a patently offensive manner; and the material at issue need not be considered as a whole"); *People v. Gagnon*, 997 P.2d 1278, 1280–81 (Colo.App.1999) (similar).

### C. Vagueness Challenge

Defendant next contends the Internet luring statute is unconstitutionally vague. We disagree.

■ A vague law offends due process because it fails to give fair notice of the conduct prohibited and does not supply adequate standards to prevent arbitrary and discriminatory enforcement. *Hickman*, 988 P.2d at 643. A law is void for vagueness if its prohibitions are not clearly defined and it may be reasonably susceptible of more than one interpretation by a person of common intelligence. *Id.*

---

4. We do not address defendant's argument, raised for the first time in his reply brief, that section 18–3–306 is unconstitutional because he was using an adult-oriented chat room where members were required to agree that they were at least eighteen years old. *See People v. Czemerynski*, 786 P.2d 1100, 1107 (Colo.1990) (declin-

ing to address a constitutional claim raised for the first time in the defendant's reply brief).

5. For example, defendant instructed "Trista" to masturbate herself and then "taste [her]self" by "suck[ing] her fingers."

In assessing a vagueness challenge, words and phrases used in statutes are to be considered in their generally accepted meaning, and we have a duty to construe a statute so that it is not void for vagueness, if a reasonable and practical construction can be given to its language. *People v. Nix*, 42 P.3d 41, 44 (Colo.App.2001). We may sustain a facial vagueness challenge only "where the enactment is 'impermissibly vague in all of its applications.' " *Hickman*, 988 P.2d at 643 (quoting *Baer*, 973 P.2d at 1233).

On appeal, defendant asserts that the luring statute is vague on its face because the definition of "in connection with" is inconsistent with the statute's "for any purpose" language. We discern no such inconsistency.

The luring statute has two distinct elements: (1) a communication to a person under the age of fifteen that describes "explicit sexual conduct"; and (2) a statement "in connection with that description" persuading the person to meet for any purpose. The grammatical construction of this language is that the statement can be under the guise of "any purpose," so long as it is made "in connection with" the description of explicit sexual conduct.

Therefore, contrary to defendant's argument, a person of common intelligence would comprehend what conduct is prohibited by the statute and thus, it is not unconstitutionally vague.

### D. Dormant Commerce Clause Challenge

We reject defendant's argument that the luring statute violates the dormant Commerce Clause.

The negative or dormant implication of the Commerce Clause prohibits the states, through taxation or regulation, from discriminating against or unduly burdening interstate commerce. *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287, 117 S.Ct. 811, 818, 136 L.Ed.2d 761 (1997). In a dormant Commerce Clause analysis, we ask whether a challenged law discriminates against interstate commerce. *Dep't of Revenue v. Davis*, 553 U.S. 328, 338, 128 S.Ct. 1801, 1808, 170 L.Ed.2d 685 (2008). A discriminatory law is "virtually *per se* invalid," and will survive only if it "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Id.* (quoting *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99, 101, 114 S.Ct. 1345, 1350, 1351, 128 L.Ed.2d 13 (1994)). Absent such discrimination, however, the law "will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Davis*, 553 U.S. at 338–39, 128 S.Ct. at 1808 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970)).

Defendant relies primarily on *American Civil Liberties Union v. Johnson*, 194 F.3d 1149 (10th Cir.1999), to argue that any regulation of the Internet burdens interstate commerce. However, defendant's argument ignores the difference between the statute at issue in *Johnson*—which made it illegal to knowingly disseminate through a computer sexual material to a minor—and section 18–3–306—which contains the additional "luring prong."

In *Foley*, the court distinguished the New York luring statute at issue there from a statute, similar to the one in *Johnson*, which violated the Commerce Clause, by emphasizing that, due to the added "luring prong," the former statute did "not discriminate against or burden interstate trade; [but rather] ... regulate[d] the conduct of individuals who intend to use the Internet to endanger the welfare of children." 709 N.Y.S.2d 467, 731 N.E.2d at 132.

> The *Foley* court further held that it was
>
> hard pressed to ascertain any legitimate commerce that is derived from the intentional transmission of sexually graphic images to minors for the purpose of luring them into sexual activity. Indeed, the conduct sought to be sanctioned ... is of the sort that deserves no "economic" protection.

*Id.*, 709 N.Y.S.2d 467, 731 N.E.2d at 133; *see also State v. Backlund*, 672 N.W.2d 431, 438 (N.D.2003) (rejecting the defendant's dormant Commerce Clause argument because it was "difficult to ascertain any legitimate

commerce that is derived from the willful transmission of . . . sexual communications to a person believed to be a minor in order to willfully lure that person into sexual activity").

■ We consider these authorities persuasive and conclude that section 18–3–306 does not discriminate against or unduly burden interstate commerce because it regulates the conduct of persons who, through sexually explicit communications sent over the Internet, endanger the welfare of minors. We, like the *Foley* and *Backlund* courts, cannot ascertain any legitimate commerce that would be derived from these communications.

## II. Constitutionality of Obscenity Statute

Next, defendant contends that Colorado's obscenity statute, section 18–7–102(2.5)(a)(I), C.R.S.2010, is unconstitutionally vague. We are not persuaded.

Section 18–7–102(2.5)(a)(I) states, "A person commits promotion of obscenity to a minor if, knowing its content and character, such person . . . [p]romotes to a minor or possesses with intent to promote to a minor any obscene material." " 'Promote' means to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer or agree to do the same." § 18–7–101(6), C.R.S.2010.

Defendant argues that the statute is unconstitutionally vague because "promote" is subject to multiple interpretations and its definition is "unrecognizable" as compared to dictionary definitions of the word.

■ For two reasons, we reject defendant's argument. First, when a statute is challenged as void for vagueness, the essential inquiry is whether the statute describes the forbidden conduct in terms so vague that persons of common intelligence cannot readily understand its meaning and application. *People v. Longoria*, 862 P.2d 266, 270 (Colo. 1993). Here, in our view, a person of common intelligence, when reading "promote" in the context of the rest of the statute and in light of the definition provided by the legislature, could readily understand its meaning and application.

■ Second, the General Assembly may furnish its own definitions of words to guide and direct judicial determination of the intended purpose of the legislation, although such definitions may differ from ordinary usage. *Dubois v. Abrahamson*, 214 P.3d 586, 587 (Colo.App.2009). Thus, the differences between the definitions of "promote" do not render the statute unconstitutionally vague.

## III. Sufficiency of the Evidence

Finally, we reject defendant's contention that there was insufficient evidence presented to prove that he took a substantial step toward the commission of Internet sexual exploitation of a child.

We review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain defendant's convictions. *Dempsey v. People*, 117 P.3d 800, 807 (Colo.2005).

When examining the sufficiency of the evidence, we determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. *People v. Grant*, 174 P.3d 798, 811 (Colo.App.2007). A modicum of relevant evidence will not rationally support a conviction beyond a reasonable doubt, *People v. Torres*, 224 P.3d 268, 277 (Colo.App.2009); however, "[i]f there is evidence upon which one may reasonably infer an element of the crime, the evidence is sufficient to sustain that element." *Grant*, 174 P.3d at 812.

■ A person commits criminal attempt if,

acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense. A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

§ 18–2–101(1), C.R.S.2010. An attempt merely requires some overt act beyond prep-

aration; however, the overt act need not be the last proximate act necessary to complete the offense. *People v. Jackson,* 972 P.2d 698, 701 (Colo.App.1998).

The jury found defendant guilty of criminal attempt to commit the crime of Internet sexual exploitation of a child, which, under the applicable version of the statute, provided:

> A person commits internet sexual exploitation of a child if a person, who is at least four years older than a child who is under fifteen years of age, knowingly importunes, invites, or entices the child through communication via a computer network or system to ... [e]xpose or touch the child's own or another person's intimate parts while communicating with the person via a computer network or system.

Ch. 362, sec. 5, § 18–3–405.4(1)(a), 2006 Colo. Sess. Laws 2056 (in effect until amended July 1, 2009).

On appeal, defendant argues that, because he testified at trial that he never believed he was talking to an actual child, the evidence was insufficient to prove that he took a substantial step toward knowingly inviting "Trista" to expose or touch her own intimate parts while communicating with her on a computer network or system.

The evidence at trial, viewed in the light most favorable to the prosecution, revealed that:

- "Trista" told defendant that she was fourteen years old several times during the course of their communications;

- Defendant, at numerous time, acknowledged "Trista's" young age: in response to receiving a picture of "Trista," he told her, "[Y]ou don't look 14"; he asked if "Trista's" mom left her alone often; he stated that, if she "[gave] it time," she would be able to get into a bar; and, when trying to arrange for "Trista" to meet him, he said that he "wish[ed] she were older and had a car";

- Defendant never confirmed with "Trista" that they were, in fact, engaged in a role-play, despite having done so with others in the past; and

- Via computer message, defendant instructed "Trista" to touch her intimate parts.

In our view, this evidence was sufficient to support a conclusion by a reasonable jury that defendant took a substantial step toward knowingly inviting "Trista" to touch her own intimate parts via computer network or system. Although defendant argues that his own testimony compels a different conclusion, the resolution of inconsistent testimony and the determination of the credibility of witnesses were within the province of the jury. *See People v. Fuentes,* 258 P.3d 320, 326 (Colo.App.2011).

The judgments of conviction are affirmed.

Judge CASEBOLT and Judge WEBB concur.