23CA2198 Peo v Martinez 08-29-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA2198 La Plata County District Court No. 23CR239 Honorable Suzanne F. Carlson, Judge The People of the State of Colorado, Plaintiff-Appellant, v. Anthony Rudolfo Martinez, Defendant-Appellee. ORDER AFFIRMED Division VI Opinion by JUDGE YUN Graham, J., concurs Welling, J., dissents NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 29, 2024 Christian Champagne, District Attorney, Justin Howard Pierce, Deputy District Attorney, Durango, Colorado, for Plaintiff-Appellant Adrienne R. Teodorovic, Alternate Defense Counsel, Windsor, Colorado, for Defendant-Appellee 
1 ¶ 1 The People appeal the district court’s order dismissing the charge of internet luring of a child against defendant, Anthony Rudolfo Martinez, following a preliminary hearing on probable cause. We affirm. I. Background ¶ 2 The People charged Martinez with offenses including internet luring of a child, a class 4 felony in violation of section 18-3-306(1), C.R.S. 2024. As relevant here, one of the elements of internet luring of a child is that the actor “describes explicit sexual conduct as defined in section 18-6-403(2)(e),” C.R.S. 2024, to a person the actor believes to be under fifteen years of age. § 18-3-306(1). Section 18-6-403(2)(e) defines explicit sexual conduct as “sexual intercourse, sexual intrusion, erotic fondling, erotic nudity, masturbation, sadomasochism, or sexual excitement.” ¶ 3 The district court conducted a preliminary hearing in Martinez’s case. A detective, the only witness called at the hearing, testified that he was involved in a multi-agency operation to catch child sex predators. As part of that operation, he explained, a police officer, who was twenty-five or twenty-six years old, used photographs of herself to create a Facebook profile for a fictitious 
2 fourteen-year-old girl named Maddison Taylor. Martinez messaged the profile and began corresponding with the officer, and eventually, he suggested that they meet up. When Martinez arrived at the meeting point, an arrest team including the detective took him into custody. ¶ 4 A transcript of the Facebook messages between Martinez and the officer was admitted into evidence, and it included the following exchanges: Maddison Taylor: What do you wanna do when we hang out [hand-over-mouth blushing smiling emoji] Martinez: We can get something to eat we can chill at the park we can listen to music in my truck. Maddison Taylor: What do u want to do [winking emoji] hehe [hearts around smiling face emoji] you tell me Martinez: I got tinted windows [hearts around smiling face emoji] [winking emoji] Madison Taylor: hehe yea? what would u wanna do [winking emoji] Martinez: I’m down for whatever let’s get something to eat or if your not hungry we can 
3 get drinks at Sonic and go to the [park
1
] and chill in my truck . . . . Maddison Taylor: What did you mean by the tinted windows hehe [smiling tongue out emoji] I had to ask [monkey covering eyes emoji] Martinez: LOL I mean we can do whatever cuz I have tinted windows lol . . . . Maddison Taylor: Is there any chance I would get pregnant Martinez: No I have protection Maddison Taylor: Is it going to hurt I’ve never done it before Martinez: Idk lol ¶ 5 On cross-examination, the detective testified that Martinez “never used any explicit sexual language in any communication with” the officer, “never initiated any sexual communication at all,” and “did not describe a sex act.” He further testified that Martinez did not describe sexual intercourse, sexual intrusion, erotic fondling, erotic nudity, masturbation, sadomasochism, or sexual 1 The word “park” in this message is not legible in the record on appeal, but the detective testified at the preliminary hearing that Martinez “suggested they . . . go to the park.” 
4 excitement, as those terms are defined by statute. See § 18-6-403(2). ¶ 6 After the hearing, the district court issued a written order finding that [t]he statements of the officer appear to reference sexual intercourse, but Defendant did not describe sexual intercourse. . . . Even viewing the evidence in the light most favorable to the District Attorney, he did not establish probable cause that Defendant described explicit sexual conduct as required to commit the offense of Internet Luring of a Child. Accordingly, the court dismissed the charge. ¶ 7 Pursuant to section 16-12-102(1), C.R.S. 2024, the People appeal the dismissal. II. Analysis ¶ 8 The People contend that the district court erred by finding that Martinez did not describe sexual intercourse during his communications with the officer. We disagree. A. Standard of Review ¶ 9 A preliminary hearing is “a screening device, designed to determine whether probable cause exists to support charges that an accused person committed a particular crime or crimes.” People v. 
5 Treat, 568 P.2d 473, 474 (Colo. 1977). To establish probable cause, the prosecution must introduce evidence sufficient to “permit a person of ordinary prudence and caution to form a reasonable belief that the accused committed the offense or offenses charged.” People v. Walker, 675 P.2d 304, 306 (Colo. 1984). The district court “must view all evidence and draw all inferences in favor of the prosecution.” People v. Hall, 999 P.2d 207, 221 (Colo. 2000). ¶ 10 We review a district court’s probable cause ruling at a preliminary hearing for an abuse of discretion, and we will not overturn such a ruling absent a showing that it is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous view of the law. People v. Rieger, 2019 COA 14, ¶ 7.
2 ¶ 11 Furthermore, to the extent that the district court’s ruling turns on its interpretation of the internet luring of a child statute, we review the court’s statutory interpretation de novo. Id. at ¶ 8. 2 Only if we determine that the district court applied an erroneous construction of law at the preliminary hearing will we review the record de novo to determine whether the facts, when viewed in the light most favorable to the prosecution, would induce a reasonably prudent and cautious person to entertain the belief that the defendant committed the crime charged. People v. Hall, 999 P.2d 207, 221 (Colo. 2000). 
6 We aim to effectuate the legislature’s intent and, in doing so, “we look first to the language of the statute itself, reading words and phrases in context and construing them according to rules of grammar and common usage.” Id. at ¶ 9 (quoting People v. Butler, 2017 COA 117, ¶ 24). If the statute’s language is clear, we must apply it as written and need look no further. Id. at ¶ 10. B. Law and Discussion ¶ 12 The People argue that the district court erred by finding that Martinez did not “describe” sexual intercourse in his messages to the officer. Specifically, they argue that, because the court was required to “draw all inferences in favor of the prosecution,” Hall, 999 P.2d at 221, the court erred by failing to draw “the inference that [Martinez] was describing” sexual intercourse when he said that (1) “we can do whatever” because his truck had tinted windows; (2) he had “protection” against pregnancy; and (3) he did not know if “it” would hurt. We are not persuaded. ¶ 13 An actor commits internet luring of a child if the actor knowingly communicates over a computer or computer network, telephone network, or data network or by a text message or instant message to a person who the actor knows or believes to be under fifteen years of age and, in 
7 that communication or in any subsequent communication by computer, computer network, telephone network, data network, text message, or instant message, describes explicit sexual conduct as defined in section 18-6-403(2)(e), and, in connection with that description, makes a statement persuading or inviting the person to meet the actor for any purpose, and the actor is more than four years older than the person or than the age the actor believes the person to be. § 18-3-306(1) (emphasis added). While the statute does not define the word “describes,” it defines “explicit sexual conduct” to include “sexual intercourse.” § 18-6-403(2)(e). ¶ 14 As an initial matter, the People’s argument that the district court erred by drawing “an inference in [Martinez’s] favor” regarding the meaning of the word “describes” in section 18-3-306(1) misunderstands the law. The court’s obligation to draw inferences in favor of the prosecution applies to evidentiary matters, not to the interpretation of statutes. See Miller v. Dist. Ct., 641 P.2d 966, 968 (Colo. 1982) (At a preliminary hearing, “[i]f the testimony conflicts, the trial court must draw an inference for the prosecution.”). On the contrary, “[t]he cardinal rule of statutory construction is that criminal statutes are to be strictly construed in favor of the accused.” People v. Hrapski, 658 P.2d 1367, 1369 (Colo. 1983). 
8 The prosecution is not entitled to an inference in its favor regarding the construction of statutory terms. ¶ 15 Turning to the statute, we cannot conclude, based on the plain meaning of the word “describes,” that Martinez described sexual intercourse in any of the three statements highlighted by the People or, indeed, at any point during his correspondence with the officer posing as Maddison Taylor. See Websters Third New International Dictionary 610 (2002) (defining “describe” as “to represent by words written or spoken for the knowledge or understanding of others”); Webster’s Encyclopedic Unabridged Dictionary of the English Language 538 (2001) (defining “describe” as “to tell or depict in written or spoken words; give an account of”); Oxford Dictionary of English 474 (2010) (defining “describe” as to “give a detailed account in words of”); New Oxford American Dictionary 470 (3d ed. 2010) (defining “describe” as to “give an account in words of (someone or something), including all the relevant characteristics, qualities, or events”). As the detective confirmed at the preliminary hearing, Martinez did not represent sexual intercourse in words; he did not talk about or depict it; and he did not give an account of it, much less a detailed account including relevant characteristics. 
9 And as the district court correctly noted, it is “[t]he statements of the officer” that “appear to reference sexual intercourse,” not Martinez’s own statements. At most, Martinez arguably alluded or indirectly referred to sexual intercourse when he gave terse answers to the officer’s suggestive questions. But as the definitions above make clear, he did not “describe” it in his communications with the officer. ¶ 16 We are not persuaded otherwise by the People’s argument that in People v. Boles, 280 P.3d 55, 61 (Colo. App. 2011), a division of this court suggested in dicta that sending a child “information on birth control” could satisfy the “describes explicit sexual conduct” element of the internet luring of a child statute, and Martinez therefore described explicit sexual conduct when he referred to “protection.” Far from engaging in the “serious discussion[] about birth control practices” contemplated by the Boles court, id., Martinez did not explain “protection” to the officer or provide any information on how it might be used. So his one reference to “protection” did not constitute a description of explicit sexual conduct. 
10 ¶ 17 For all these reasons, we conclude that the district court did not abuse its discretion by finding that Martinez did not describe explicit sexual conduct and, accordingly, by dismissing the charge of internet luring of a child. III. Disposition ¶ 18 The order is affirmed. JUDGE GRAHAM concurs. JUDGE WELLING dissents.
11 JUDGE WELLING dissenting. ¶ 19 I agree with the majority’s recitation of the evidence presented at the preliminary hearing, as well as the legal standard that governs our review of the district court’s decision to dismiss the internet luring of a child charge. I also agree with the majority that our obligation to draw all inferences from the evidence in favor of the prosecution doesn’t extend to our interpretation of the statute; in other words, we interpret the statute de novo, as we would in any other context. Where I part ways with the majority is whether the prosecution’s evidence presented at the preliminary hearing, “taken alone and in a light most favorable to the prosecution, is sufficient to induce a reasonable belief that the defendant committed the crime with which []he has been charged.” People v. Fisher, 759 P.2d 33, 36 (Colo. 1988); see also People v. Hall, 999 P.2d 207, 221 (Colo. 2000) (“The court must view all evidence and draw all inferences in favor of the prosecution, and the court must not accept the defendant’s version of the facts over the legitimate inferences that can be drawn from the prosecution’s evidence.”). I conclude that it was. 
12 ¶ 20 The majority, like the district court, focuses its analysis on whether there was evidence presented at the preliminary hearing that in his Facebook chat messages Martinez “describe[d]” explicit sexual conduct, as required by section 18-3-306(1), C.R.S. 2024. In reaching its conclusion that the evidence on that issue was insufficient, the majority understandably focuses on what Martinez wrote (as opposed what the officer said to prompt his response). Based on its reading of the chat log, the majority concludes that, at most, Martinez alluded or indirectly referred to sexual intercourse, but didn’t “describe” it, as the statute requires. The only participant who did so, if anyone, was the officer. The majority buttresses its conclusion with the testimony of the detective, who, on cross-examination, conceded that Martinez himself “didn’t use any explicit sexual language” or even mention sex or any sexual act at all. Based on this, the majority concludes that the district court didn’t abuse its discretion by dismissing the charge of internet luring of a child. ¶ 21 I respectfully disagree with this view of the evidence. See Hall, 999 P.2d at 221 (“Because this case was dismissed at the preliminary hearing, we must consider the facts in the light most 
13 favorable to the prosecution and we must draw all inferences against the defendant.”). The Facebook chat logs admitted at the preliminary hearing establish that in response to being asked by the officer what he wanted to do when they met, Martinez told the officer that he’s “got tinted windows” on his vehicle. When the officer again asked Martinez what he wanted to do when they met, Martinez respond that he’s “down for whatever,” and that “we can do whatever cuz I have tinted windows.” ¶ 22 In my view, the issue of probable cause turns on whether Martinez saying he’s “down for whatever” could constitute “describ[ing] explicit sexual conduct.” In isolation, it likely doesn’t (even applying the favorable evidentiary standard that governs a preliminary hearing). But context matters. Here, not only did Martinez twice reference “tinted windows” — supporting the inference that his contemplated activity was in some way illicit or at least needed to be shielded from public view — but he eliminated any mystery about whether being “down for whatever” described sexual conduct when he introduced the concept of “protection.” Specifically, when the officer asked Martinez, “Is there any chance I 
14 would get pregnant,” he responded, “No I have protection.”
1 This exchange supports the inference that when Martinez said that he would be “down for whatever,” he was describing sexual intercourse, which is “explicit sexual conduct as defined in section 18-6-403(2)(e),” C.R.S. 2024. § 18-3-306(1). Simply put, viewed in context and drawing all inferences in favor of the prosecution, Martinez’s explicit reference to “protection” sufficiently bridges the gap between mere innuendo and a description of sexual intercourse. ¶ 23 “Given the limited nature of a preliminary hearing and the low standard for establishing probable cause,” People v. Hodge, 2018 COA 155, ¶ 19, in my view, a person of ordinary prudence and caution could reasonably believe that, in his Facebook communications with the officer, Martinez described explicit sexual conduct — namely, sexual intercourse — and thereby the People 1 Martinez’s use of the word “protection” is plainly a reference to contraception, and his lack of further explanation of what he meant by protection doesn’t obfuscate its meaning — particularly given how inferences must be drawn at this stage. See, e.g., People v. Villapando, 984 P.2d 51, 55 (Colo. 1999) (“[W]hen making the determination regarding the sufficiency of the evidence, the trial court should view the evidence in the light most favorable to the prosecution.”). 
15 established probable cause for internet luring of a child. Hall, 999 P.2d at 221–22 (At a preliminary hearing, the prosecution doesn’t have to satisfy the much higher burden of proof beyond a reasonable doubt; “[r]ather, it need only establish sufficient evidence so that a reasonably prudent and cautious person could entertain the belief that [the defendant] committed the crime.”); People v. Villapando, 984 P.2d 51, 55 (Colo. 1999) (“While the prosecution has the burden of establishing probable cause, it is not necessary for the prosecution to present evidence sufficient to support a conviction for the crime charged.”). Accordingly, I would reverse the district court’s dismissal of the charge of internet luring of a child. ¶ 24 For this reason, I respectfully dissent.