**Adam WINTER, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 04SC654.**

Supreme Court of Colorado.

Jan. 9, 2006.

---

David S. Kaplan, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, for Petitioner.

John W. Suthers, Attorney General, Karen E. Lorenz, Assistant Attorney General, Jennifer M. Smith, Assistant Attorney General, Denver, for Respondent.

MARTINEZ, Justice.

We granted certiorari to determine whether the employee lockers in this case are included within the concept of a "vault" or "other apparatus or equipment" under the third degree burglary statute, § 18–4–204(1), C.R.S. (2005); and if included, whether the third degree burglary statute violates due process of law because it is unconstitutionally vague both on its face and as applied. We hold that the lockers in this case are not included within the concept of a "vault" or "other apparatus or equipment." We do not reach the second issue. Accordingly, we reverse the decision of the court of appeals and vacate Adam Winter's conviction for third degree burglary.

## I. Facts and Proceedings Below

Defendant Adam Winter was employed by a truck shop, Marini Diesel, from September 2000 to February 2001. Part of Winter's work involved taking the work coveralls delivered from the cleaners each week and placing them above or inside each of the employees' lockers.

The employee lockers at Marini Diesel did not have internal locking mechanisms and were similar to typical gymnasium or school lockers. Although possible to secure them using a standard padlock or similar locking device, no locking devices were provided and the lockers were never actually locked by any of the employees.

Sometime in January 2001, several employees noticed small amounts of cash were missing from their work lockers and one employee was also missing a wallet. Suspecting theft, one of the employees installed a small video camera in the room. Video footage from the camera later revealed Winter looking through four of the lockers and taking items from them.

Winter was subsequently arrested. During a stationhouse interrogation, he admitted taking cash from the employees' lockers, totaling approximately $163. Winter was charged with one count of third degree burglary, a class five felony under section 18–4–204, C.R.S. (2005),[1] and one count of theft, a class two misdemeanor under section 18–4–401, C.R.S. (2005). Although the theft

---

1. The statute has not changed in any respect from 2001, accordingly we cite to the 2005 volume of statutes.

charge was later dropped, the jury was instructed as to the theft charge as a lesser non-included offense of the burglary charge. The trial court did not inform the jury that the defendant could be found guilty on both the third degree burglary and theft counts. The jury did not complete the verdict form on the theft charge.

Following a jury trial, Winter was found guilty on the burglary charge. He was subsequently sentenced to a two-year term of probation. Winter appealed his conviction. In an unpublished opinion, the court of appeals affirmed the judgment of conviction. *People v. Winter*, No. 02CA0947, slip op. at 5, 2004 WL 1516969 (Colo.App. July 8, 2004). The court concluded that Winter was properly convicted under section 18–4–204, because he "entered or broke into what is tantamount to a vault." *Winter*, slip op. at 5. The court declined to address Winter's remaining arguments that a locker does not fall under the statutory terms "apparatus or equipment" or his alternative claim that those terms are void for vagueness. *Id.* We granted certiorari to address these issues.[2]

## II. Analysis

■ Winter appeals his conviction on the basis that his actions do not fall within the purview of the third degree burglary statute. Section 18–4–204(1), the statute under which he was charged and convicted, provides as follows:

> A person commits third degree burglary if with intent to commit a crime he enters or breaks into any vault, safe, cash register, coin vending machine, product dispenser, money depository, safety deposit box, coin telephone, coin box, or other apparatus or equipment whether or not coin operated.

The particular items listed in the statute are not further clarified or defined.

2. Specifically, we granted certiorari to determine:

1) whether the court of appeals erred in concluding that the prosecution presented sufficient evidence that the Petitioner entered a "vault" or "apparatus or equipment" under the third degree burglary statute, section 18–4–204(1), C.R.S. (2005), and 2) whether, as construed by the court of appeals, the third degree burglary statute violates due process of law

Winter argues his conviction cannot be sustained because lockers are not among the items in the statute. He further argues that a locker is not a "vault" or its equivalent, nor is it properly considered "apparatus or equipment" under the statute. On this basis, Winter contends the prosecution did not present sufficient evidence to convict him under section 18–4–204(1).

To determine whether Winter's actions fall within the purview of the statute, we first look to the plain language of the statute. *See Lakeview Associates v. Maes*, 907 P.2d 580, 584 (Colo.1995). The items enumerated do not include lockers and the statute does not specify the definitions or characteristics of the remaining items.[3]

■ As a result, we turn to two rules of statutory construction. First, criminal statutes in derogation of the common law are narrowly construed in favor of the defendant. *See People v. Nees*, 200 Colo. 392, 396, 615 P.2d 690, 693 (1980); *De Gesualdo v. People*, 147 Colo. 426, 434, 364 P.2d 374, 378 (1961). At common law, burglary was the breaking and entering into a dwelling at night with felonious intent. *See Sanchez v. People*, 142 Colo. 58, 59, 349 P.2d 561, 561 (1960). This definition has broadened over time to include other times and other places. *See id.* at 59–60, 349 P.2d 561; *Macias v. People*, 161 Colo. 233, 236, 421 P.2d 116, 118 (1966). First and second degree burglary adhere to our traditional understanding of common law burglary by addressing intentional breaking, entering, or unlawful remaining in a building or occupied structure with the intent to commit a crime therein. §§ 18–4–202 to –203, C.R.S. (2005); *see also Cooper v. People*, 973 P.2d 1234, 1237–41 (Colo.1999). In contrast, third degree burglary, section 18–4–204, deems breaking or entering with the requisite intent

because it is unconstitutionally vague both on its face and as applied to the Petitioner.

3. Legislative history is sometimes useful to determine the General Assembly's intent. Here, however, audio recordings of the legislative deliberations are not available to us as the relevant portions of section 18–4–204 were enacted in 1971, and recordings are not available prior to 1973.

into any one of a particular type of safekeeping structure or container to be a form of burglary. The items enumerated in the statute do not involve dwellings or other buildings and are in a class foreign to the common law concept of burglary. Consequently, we construe the statute strictly because it deviates from the common law.

■ Second, where a general term follows a list of things in a statute, we apply the principle of *ejusdem generis*, that is, the general terms are applied only to those things of the same general kind or class as those specifically mentioned. *See Davidson v. Sandstrom*, 83 P.3d 648, 656 (Colo.2004). Here, the phrase "other apparatus or equipment" must be interpreted to apply only to those things that share the characteristics of the items listed in the statute.

In affirming Winter's conviction, the court of appeals relied upon the underlying statutory intent of the General Assembly as construed by another division of the court of appeals. In *People v. Garcia*, a division of the court explained that the statute was intended "to address the problem of unauthorized entry into any structure or apparatus designed to receive and hold money or valuables." 784 P.2d 823, 825 (Colo.App.1989). With this statutory understanding, the court held that the statute applied to a parking lot money collection box as it was a "money depository" within the meaning of the statute. *Id.*

The court of appeals also analogized the instant case to *People v. Geyer*, 942 P.2d 1297 (Colo.App.1997). In *Geyer*, a division of the court of appeals held that a locked glass display cabinet recessed in a wall was sufficiently similar to a vault as to fall within the purview of "other apparatus or equipment" as contemplated by the statute. *Id.* at 1299–1300. Similarly, the court of appeals below reasoned that because the Marini Diesel lockers were individually assigned, contained valuables, and were "designed to accept padlocks and to safeguard valuables," the lockers fell within the intended reach of the statute and were the equivalent of "vaults." *Winter*, slip op. at 4–5.

Looking at the statute generally, the list includes such traditional safekeeping equipment as vaults, safes, safety deposit boxes, and cash registers, as well as coin vending machines, product dispensers, and coin telephones. Given the relative abundance of lockers and their frequent use for safekeeping valuables, the omission of lockers from the list strikes us as significant.

In particular, if the statute were intended to cover all structures designed to hold property, the statute would have been written more broadly to specifically include lockers or similar containers with the mere potential to contain money or valuables by virtue of their design. Instead, the statute contains items that are almost always used to contain money or valuables exclusively: vaults, safes, cash registers, coin vending machines, product dispensers, money depositories, safety deposit boxes, coin telephones, and coin boxes. These items have specific uses that are plainly evident: it is this appearance that we find essential to the class.

The common characteristic of the enumerated class in section 18–4–204(1) is not simply the intended design of the apparatus or equipment. Rather, the class also involves the appearance of that structure or container. In effect, section 18–4–204(1) draws a distinction between actual safekeeping and mere containment. Further, this safekeeping pertains to a limited class of items: the safekeeping targeted by the statute is not merely the safekeeping of any kind of property, but instead pertains specifically to the safekeeping of money or valuables. *See Garcia*, 784 P.2d at 825; *Geyer*, 942 P.2d at 1299. In contrast to property generally, valuables connote articles of greater importance or worth, especially small items of personal property. Thus, whether any given container falls within the purview of the statute depends on whether the apparatus or equipment is merely a storage receptacle or is of the same kind or class as those items enumerated in the statute, that is, whether the container is designed for the safekeeping of money or valuables, and whether that design or use is evident.

Although the item in the class that comes closest to a locker is a vault, lockers and vaults are distinguishable according to their

plain and ordinary meanings. A vault is typically defined as "a room or compartment, often built of steel, for the safekeeping of valuables." American Heritage Dictionary of the English Language 1905 (4th ed.2000). One commonly thinks of a vault as a large, heavily secured chamber, as one might find in a bank, museum, or casino. In contrast, a locker is defined as "[a] small, usually metal compartment that can be locked, especially one at a gymnasium or public place for the safekeeping of clothing and valuables." *Id.* at 1027. As noted above, however, the class distinction turns on more than mere design or potential use. Consequently, the distinction is not so clear as a practical matter.

A locker may be used to store any number and manner of items and may be secured or unsecured. It may be nearly any size and may be constructed from numerous materials. Because of these and other variations, one could speculate almost endlessly as to whether a locker is sufficiently "vault-like" to fit within the purview of "other apparatus or equipment." Accordingly, the issue is not resolved on semantics, but must turn on the particulars of any given case.

Returning to the specific facts before us, we consider whether the employee lockers at Marini Diesel share the characteristics of the items listed in the statute so as to properly fit within the statutory class. Here, there were no measures taken to secure the lockers from unauthorized entry, the lockers did not have locking mechanisms, and locks had never been used with any of the lockers. The locker room was also open and accessible to the employees. Although the lockers were used to store the employees' personal property, including cash and potential "valuables" as contemplated by the statute, the lockers did not share the other characteristics essential to the statutory class. Namely, there were no readily ascertainable features to suggest that the lockers were being employed for the safekeeping of money or valuables in the same manner as those items enumerated in the statute. There were no locks or other security devices used in conjunction with the lockers to suggest heightened security or that these lockers were reserved for securing cash or valuables. In sum, there was nothing about the appearance of the Marini Diesel lockers to clearly indicate they were "vault-like" or of the same type or class as the other items listed in the statute.

We find that an unsecured and unlocked locker which does not have the appearance of being employed for the safekeeping of valuables is not within the class of items contemplated by section 18-4-204(1). Because we resolve this issue on this ground, we do not find it necessary to address whether the phrase "other apparatus or equipment" is void under the vagueness doctrine.

### III. Conclusion

We reverse the decision of the court of appeals and vacate Winter's conviction for third degree burglary.