2015 COA 27

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Joseph S. NERUD, Defendant–Appellant.**

**Court of Appeals No. 12CA1416**

Colorado Court of Appeals,
Div. A.

Announced March 12, 2015

Cynthia H. Coffman, Attorney General, Gabriel P. Olivares, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Rebecca R. Freyre, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by CHIEF JUDGE LOEB

¶ 1 Defendant, Joseph S. Nerud, appeals the judgment of conviction entered on jury verdicts finding him guilty of two counts of third degree burglary and three counts of theft. We affirm.

## I. Background

¶ 2 Nerud stole money and a backpack from three gym lockers at a 24–Hour Fitness Center on three separate occasions. He was apprehended by police during the third theft, and he eventually admitted to all three thefts in a police interview. However, he denied breaking any locks to enter the lockers. He claimed that he rummaged through belongings in unlocked lockers until he found money to take.

¶ 3 Nerud was charged with two counts of third degree burglary related to the first two incidents and three counts of theft. The primary contested issue at trial was whether the first two victims' lockers were locked or unlocked. Both victims testified that they had secured their lockers with personal combination locks prior to the thefts. The defense theory was that the victims were mistaken, and Nerud merely stole from unlocked lockers. Nerud asked the jury to convict him of theft but not burglary. The jury found Nerud guilty on all counts. This appeal followed.

¶ 4 On appeal, Nerud contends that (1) the trial court erred by denying his pretrial motion in which he argued that the third degree burglary statute is unconstitutionally vague on its face and as applied to him; (2) there was insufficient evidence to convict him of third degree burglary; (3) the trial court's jury instruction defining the phrase "other apparatus or equipment" in the third degree burglary statute was improper; (4) the trial court reversibly erred in giving a jury instruction on possession of recently stolen property; and (5) the trial court plainly erred in allowing the prosecutor to make improper statements in closing argument.

For the reasons set forth below, we reject each of these contentions and, therefore, affirm the judgment of conviction.

## II. Vagueness

¶ 5 Nerud contends, as he did in the trial court, that the third degree burglary statute, section 18-4-204(1), C.R.S. 2014, is unconstitutionally vague insofar as it prohibits entering or breaking into "other apparatus or equipment." Nerud argues that this phrase is vague both on its face and as applied to him. We disagree.

### A. Standard of Review and Applicable Law

¶ 6 The constitutionality of a statute is a legal question that we review de novo. *People v. Allman*, 2012 COA 212, ¶ 7, 321 P.3d 557. We presume that the statute is constitutional, and the challenging party bears the burden of proving its unconstitutionality beyond a reasonable doubt. *People v. Baer*, 973 P.2d 1225, 1230 (Colo. 1999).

¶ 7 "A statute is void for vagueness where its prohibitions are not clearly defined and it is reasonably susceptible of more than one interpretation by a person of common intelligence." *Allman*, ¶ 18 (internal quotation marks omitted). A vague statute violates due process because it fails to give fair notice of what conduct is prohibited and it does not supply adequate standards to prevent arbitrary and discriminatory enforcement. *Baer*, 973 P.2d at 1233.

¶ 8 We will sustain a facial challenge only where a statute is impermissibly vague in all of its applications. *Id.* If the facial challenge fails, the defendant must demonstrate that the statute is impermissibly vague as applied to him or her. *Id.*

### B. Third Degree Burglary Statute and Relevant Case Law

¶ 9 Section 18-4-204(1) provides that "[a] person commits third degree burglary if with intent to commit a crime he enters or breaks into any vault, safe, cash register, coin vending machine, product dispenser, money depository, safety deposit box, coin telephone, coin box, or other apparatus or equipment,

whether or not coin operated." The statute does not explain or define the phrase "other apparatus or equipment."

¶ 10 Three cases interpreting this statute are relevant to our analysis. First, in *People v. Garcia*, 784 P.2d 823, 825 (Colo. App. 1989), a division of this court explained that the statute was intended "to address the problem of unauthorized entry into any structure or apparatus designed to receive and hold money or valuables." The division held that a parking lot money collection box was a "money depository" within the meaning of the statute. *Id.*

¶ 11 In *People v. Geyer*, 942 P.2d 1297, 1300 (Colo. App. 1996), a division of this court held that the phrase "other apparatus or equipment" was not unconstitutionally vague as applied to a defendant who broke into a locked glass display case. The division reasoned that the display case constituted "other apparatus or equipment" within the meaning of the statute because it was "similar to a 'vault,' *i.e.*, a room or area designed for the safekeeping of valuables." *Id.*

¶ 12 More recently, in *Winter v. People*, 126 P.3d 192, 196 (Colo. 2006), our supreme court held that unlocked employee lockers were not "other apparatus or equipment" under the third degree burglary statute. To interpret that phrase, the court applied the doctrine of *ejusdem generis*, a rule of statutory interpretation by which "general terms are applied only to those things of the same general kind or class as those specifically mentioned." *Id.* at 195. Based on the characteristics of the items listed in the statute, the court articulated the following standard for determining whether a container constitutes "other apparatus or equipment":

> [W]hether any given container falls within the purview of the statute depends on whether the apparatus or equipment is merely a storage receptacle or is of the same kind or class as those items enumerated in the statute, that is, whether the container is designed for the safekeeping of money or valuables, and whether that design or use is evident.

*Id.*

¶ 13 The court stated that, given the frequent use of lockers for safekeeping valu-

ables, their omission from the statute's enumerated list is "significant." *Id.* However, the court noted that lockers may be used to store any manner of items, may be secured or unsecured, may be any size, and may be constructed from n numerous materials. *Id.* at 196. Given these variations, whether a locker falls within the statute "must turn on the particulars of any given case." *Id.*

¶ 14 The *Winter* court concluded that, under the facts of that case, the employee lockers were not "other apparatus or equipment." *Id.* In particular, the court noted that there were no measures taken to secure the employee lockers from unauthorized entry, the lockers did not have locking mechanisms, and locks had never been used with them. *Id.* Thus, although the lockers were used to store personal property, including cash and valuables, "there were no readily ascertainable features to suggest that the lockers were being employed for the safekeeping of money or valuables in the same manner as those items enumerated in the statute." *Id.* The court therefore held that the unsecured lockers in that case did not constitute "other apparatus or equipment" for purposes of the third degree burglary statute. *Id.*

¶ 15 Because it held that unsecured lockers were not covered by the statute, the *Winter* court did not address whether the statute was void for vagueness. *Id.*

¶ 16 With these cases in mind, we now turn to Nerud's facial and as-applied challenges.

### C. Facial Challenge

¶ 17 To succeed in his facial vagueness challenge, Nerud must demonstrate that the statute is impermissibly vague in all of its applications. *Baer*, 973 P.2d at 1233. The statute must be "vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *People v. Hickman*, 988 P.2d 628, 643 (Colo. 1999) (internal quotation marks omitted). A statute is not vague on its face if a person of normal intelligence has fair notice of what acts are proscribed. *See id.* at 644.

¶ 18 In light of the supreme court's interpretation of "other apparatus or equipment" in *Winter*, we conclude that the third degree burglary statute is not vague on its face. As set forth in *Winter*, under the doctrine of *ejusdem generis*, the phrase "other apparatus or equipment" is limited to containers with the same characteristics as the other items listed in the statute. *Winter*, 126 P.3d at 195. Specifically, it covers only containers that are designed and used for the safekeeping of money or valuables, where that design and use is evident. *Id.* Thus, this is not a case where "no standard of conduct is specified at all" by the statute. *Hickman*, 988 P.2d at 643. The characteristics of the other items listed in the statute provide sufficient guidance for a person of common intelligence to understand what type of container constitutes "other apparatus or equipment" under the third degree burglary statute.

¶ 19 We reject Nerud's contention that the doctrine of *ejusdem generis* does not apply to facial vagueness challenges. Nerud has not cited nor have we found any controlling authority to support that contention. *See Geyer*, 942 P.2d at 1299 (citing cases from other jurisdictions). Moreover, we are not persuaded that the doctrine is "not within the understanding of ordinary people." Although an ordinary person might not be familiar with the Latin phrase, the underlying concept is one of basic common sense. Within the context of the third degree burglary statute, "other apparatus or equipment" clearly does not refer to playground equipment or a tennis court, which are among the examples Nerud suggests it might encompass. Rather, ordinary people are capable of understanding that, in the context of the statute, "other apparatus or equipment" refers to containers similar to the other listed items.

¶ 20 We also reject Nerud's suggestion that "apparatus" and "equipment" should be interpreted according to their dictionary definitions. The supreme court did not take that approach in *Winter*, and we are bound by the supreme court's interpretation of the statute.

¶ 21 For these reasons, we conclude that the phrase "other apparatus or equipment" is not unconstitutionally vague on its face.

### D. As–Applied Challenge

¶ 22 "A statute is vague as applied if it does not, with sufficient clarity, prohibit the conduct against which it is to be enforced." *People v. McIntier*, 134 P.3d 467, 475 (Colo. App. 2005). An as-applied challenge fails if "persons of ordinary intelligence do not have to guess as to whether the statute applies to this alleged conduct." *Baer*, 973 P.2d at 1234.

¶ 23 Here, the People alleged that Nerud broke into gym lockers that were secured with personal combination locks. The lockers were used to safeguard personal items, cash, and valuables while members worked out at the gym.

¶ 24 We conclude that the lockers in this case fall squarely within the purview of "other apparatus or equipment," as construed in *Winter*. Unlike the employee lockers in *Winter*, which had never been locked or secured in any way, the gym lockers in this case were secured with personal combination locks. Thus, the gym lockers here bore "readily ascertainable features to suggest that [they] were being employed for the safekeeping of money or valuables in the same manner as those items enumerated in the statute." *Winter*, 126 P.3d at 196. Under these circumstances, a person of ordinary intelligence would understand that the statute's prohibition on breaking into "other apparatus or equipment" applies to the locked gym lockers in this case.

¶ 25 Nerud argues that, because signs were posted around the gym warning members not to place valuables in the lockers, the lockers were not an apparatus designed to safeguard money or valuables. We are not persuaded. The gym manager who testified at trial admitted that the signs were posted to limit the gym's civil liability. She testified that people often came straight from work and stored valuable items such as laptops, rings, and jewelry in the lockers while they worked out. She also testified that the lockers were designed to be capable of locking: some had built-in locking mechanisms that members could pay to use, and others could be fitted with personal locks, as was the case here. Thus, the testimony at trial established that the lockers were designed and used to safeguard money and valuables while gym members worked out. The fact that the gym posted signs to limit civil liability does not alter the lockers' basic design and use.

¶ 26 Nor are we persuaded that the lockers were not "other apparatus or equipment" because they were generally accessible to all male gym members and employees. Other items listed in the statute, such as vending machines and coin telephones, are accessible to the general public; nevertheless, they are secured so as to safeguard their contents. Similarly, when locked, the gym lockers in this case were used to safeguard valuables, notwithstanding the fact that the locker room itself was generally accessible to male gym members.

¶ 27 For these reasons, we conclude that the phrase "other apparatus or equipment" in the third degree burglary statute is not unconstitutionally vague as applied to the facts of this case.

### III. Sufficiency of the Evidence (Third Degree Burglary)

¶ 28 Nerud contends that the evidence presented at trial was insufficient to prove that the lockers he entered were "other apparatus or equipment" under the third degree burglary statute. To the extent that he argues that even locked gym lockers do not fall within the third degree burglary statute, we have already addressed and rejected this contention above. However, he also argues that there was insufficient evidence that the lockers from which he took money were, in fact, locked. We disagree.

¶ 29 We review de novo whether the evidence before the jury was sufficient both in quantity and quality to sustain a conviction. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). We must determine " 'whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.' " *Id.* (quoting *People v. Bennett*, 183 Colo. 125, 130, 515 P.2d 466, 469 (1973)).

¶ 30 In our analysis, we must give the People the benefit of every reasonable inference that may be fairly drawn from the evidence. *Id.* at 1292. The credibility of witnesses and the weight to be accorded to various pieces of evidence is solely within the province of the jury. *People v. Sprouse,* 983 P.2d 771, 778 (Colo. 1999).

¶ 31 Here, Nerud was charged with and convicted of two counts of third degree burglary in connection with the first two incidents in which he stole money from lockers. Both victims of those incidents testified at trial that they had secured their lockers with personal combination locks before the thefts took place. Based on the victims' testimony alone, a jury could reasonably find that the lockers were locked.

¶ 32 We are not persuaded that the evidence was insufficient because no locks were found and there was no evidence of damage to the lockers themselves. While the jury could consider these additional facts in determining the credibility and weight of the victims' testimony, the jury could nonetheless find that the testimony was credible even absent corroborating evidence. *See id.* at 778. We may not serve as a thirteenth juror by resolving conflicts in the evidence. *Id.* This was a question of fact for the jury that was resolved conclusively against Nerud at trial.

¶ 33 We therefore conclude that the evidence was sufficient to sustain Nerud's two convictions for third degree burglary.

### IV. Jury Instruction on "Other Apparatus or Equipment"

¶ 34 Nerud contends that the trial court's jury instruction defining "other apparatus or equipment" was improper and that the court erred by rejecting Nerud's tendered definitional instruction for that phrase. We disagree.

¶ 35 The trial court has a duty to instruct the jury on all matters of law. *People v. Gallegos,* 226 P.3d 1112, 1115 (Colo. App. 2009). "The district court has substantial discretion in formulating the jury instructions, so long as they are correct statements of the law and fairly and adequately cover the issues presented." *Id.* We review de novo whether a particular jury instruction correctly states the law. *Day v. Johnson,* 255 P.3d 1064, 1067 (Colo. 2011).

¶ 36 Nerud tendered the following instruction defining "other apparatus or equipment," made up of excerpts from *Winter,* 126 P.3d at 195:

> The phrase other apparatus or equipment must be interpreted to apply only to those things that share the characteristics of the items listed. Whether any given container falls within the purview of the crime of 3rd degree burglary depends on whether the apparatus or equipment is merely a storage receptacle or is of the same kind or class as those listed items, that is, whether the container is designed for the safekeeping of money or valuables, and whether that design or use is evident. The omission of lockers from the list is significant.

¶ 37 The trial court rejected Nerud's instruction and provided the following instruction instead:

> "Other apparatus or equipment" as set forth in Instruction 12 regarding 3rd Degree Burglary may include a gym locker if that locker is locked or secured or has other readily ascertainable features to suggest that the locker is employed for safekeeping of money or valuables.

¶ 38 We conclude that the trial court's instruction correctly defined "other apparatus or equipment" in light of supreme court precedent and the evidence presented in this case. As discussed above, *Winter* held that unsecured, unlocked lockers that had no "readily ascertainable features to suggest that the lockers were being employed for the safekeeping of money or valuables" did not qualify as "other apparatus or equipment." 126 P.3d at 196. The trial court correctly interpreted this holding to mean that lockers may constitute "other apparatus or equipment" if they do have locks or other similar features, and properly concluded that there was evidence to support giving such an instruction in this case. We therefore conclude that the trial court's instruction correctly stated the law as relevant to the evidence presented at trial.

¶ 39 We reject Nerud's argument that the instruction was improper because it failed to note that the omission of lockers from the enumerated list in the third degree burglary statute is significant, as stated in *Winter*, 126 P.3d at 195. A jury instruction need not provide the entire reasoning from a controlling court opinion in order to correctly state the law; indeed, such an approach is unwise because opinions and instructions have very different purposes. *See People v. Pahl*, 169 P.3d 169, 184 (Colo. App. 2006) ("Although language in an opinion may be a correct statement of the law as related to the facts and issues in the case, it may not be sufficiently general, clear, or accurate to serve as a satisfactory or full instruction to a jury." (internal quotation marks omitted)). The trial court's instruction correctly defined "other apparatus or equipment" based on the considerations set forth in *Winter*, and the failure to include this additional excerpt from *Winter's* reasoning did not render the jury instruction improper.

¶ 40 Likewise, the trial court did not abuse its discretion in rejecting Nerud's tendered instruction. Nerud's instruction was made up entirely of direct excerpts from the opinion in *Winter*. As noted, using opinion excerpts as jury instructions may be unwise given their different purposes. *Pahl*, 169 P.3d at 183–84. Moreover, because the trial court's instruction gave a correct definition of "other apparatus or equipment," the trial court did not err in refusing Nerud's preferred instruction on the same issue. *See People v. Frantz*, 114 P.3d 34, 41 (Colo. App. 2004) ("It is unnecessary to give an instruction that is encompassed in other instructions given by the court.").

¶ 41 For these reasons, we discern no error in the trial court's jury instruction defining "other apparatus or equipment."

## V. Jury Instruction on Possession of Recently Stolen Property

¶ 42 Nerud contends that the trial court erred in giving a jury instruction on the inference that may be drawn from a defendant's unexplained, exclusive possession of recently stolen property. We conclude that any error in giving the instruction was harmless.

¶ 43 We review a trial court's decision to give a particular jury instruction for an abuse of discretion. *Day*, 255 P.3d at 1067. A trial court should not instruct a jury on abstract principles of law unrelated to the issues in controversy. *People v. Silva*, 987 P.2d 909, 913 (Colo. App. 1999). "Although it is appropriate for the jury to resolve questions of fact, the court has the duty to determine first which issues have been raised by the evidence presented." *Id.* at 915. We disfavor instructions that merely emphasize specific evidence. *Krueger v. Ary*, 205 P.3d 1150, 1157 (Colo. 2009); *see also People v. Merklin*, 80 P.3d 921, 927 (Colo. App. 2003).

¶ 44 Even if an instruction is given in error, reversal is not required if the error can be deemed harmless. *People v. Manzanares*, 942 P.2d 1235, 1241 (Colo. App. 1996).

¶ 45 In *Wells v. People*, 197 Colo. 350, 357–58, 592 P.2d 1321, 1326–27 (1979), an aggravated robbery case, our supreme court approved a model instruction on unexplained, exclusive possession of property recently stolen. Where there is an adequate evidentiary basis for giving the instruction, the instruction allows a permissive inference that the possessor of the recently stolen property was the robber. *Id.* at 355, 592 P.2d at 1325. The court stated that the instruction could be modified for other crimes for which it is appropriate, such as burglary or theft. *Id.* at 358, 592 P.2d at 1327.

¶ 46 Here, over Nerud's objection, the trial court ruled that there was sufficient evidence to support giving the instruction on possession of property recently stolen. The trial court's instruction was essentially identical to the model instruction approved in *Wells*.

¶ 47 It stated, in part:

Exclusive possession of property recently stolen, if not explained so as to raise a reasonable doubt as to the Defendant's, Joseph Nerud's, guilt, is ordinarily a circumstance from which the jury may draw an inference and find, in light of surrounding circumstances shown by the evidence in the case, that the person in possession

participated in the 3rd Degree Burglary and/or Theft.

You are not required to draw any conclusion from the exclusive, unexplained possession of recently stolen property, but you are permitted to infer, from the Defendant's, Joseph Nerud's, unexplained possession, that the Defendant is guilty of 3rd Degree Burglary and/or Theft if, and only if, in your judgment, such an inference is warranted by the evidence as a whole.

¶ 48 Nerud argues that this instruction improperly emphasized specific evidence related only to the third theft charge and not contested by the parties. Nerud notes that the only stolen property discovered in his possession was a backpack and money taken during the third incident. He admitted to that theft, and there was no burglary charge for that incident. Nerud argues that the instruction misled the jury by allowing an inference of guilt on the burglary charges related to the other two incidents.

¶ 49 Even assuming, without deciding, that the instruction was improperly given with respect to the burglary charges, we conclude that any error was harmless. The instruction allowed only a permissive inference that Nerud *participated* in a burglary or theft. Nerud did not contest his participation in any of the incidents giving rise to those charges; he merely claimed that the lockers he had stolen from were unlocked. Furthermore, the jury instruction explicitly stated that, before any inference could be drawn, the jury "must first find that the People have proved beyond a reasonable doubt that the crime of 3rd Degree Burglary and/or Theft did in fact occur." For the burglary charges, this required the jury to first find that the lockers were "other apparatus or equipment" as set forth under the jury instruction defining that term. Thus, the jury was clearly instructed on the prosecution's burden to prove every element of the crimes charged beyond a reasonable doubt, including the contested issue of whether the lockers constituted "other apparatus or equipment" for purposes of third degree burglary. Under these circumstances, any error in giving the instruction on possession of recently stolen property was harmless.

## VI. Prosecutor's Closing Argument

¶ 50 Nerud contends that certain statements made by the prosecutor in closing argument were improper and warrant reversal. Specifically, Nerud contends that the prosecutor improperly offered personal opinions about witness credibility and improperly commented on drug paraphernalia found in Nerud's backpack after his arrest. We discern no reversible error.

¶ 51 Because Nerud did not object to any of these statements at trial, we review whether an error requires reversal under the plain error standard. *People v. Strock*, 252 P.3d 1148, 1152 (Colo. App. 2010). "To constitute plain error, misconduct must be flagrant or glaring or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *People v. Weinreich*, 98 P.3d 920, 924 (Colo. App. 2004), *aff'd*, 119 P.3d 1073 (Colo. 2005). Prosecutorial misconduct in closing argument rarely constitutes plain error. *Strock*, 252 P.3d at 1152–53.

### A. Statements about Witness Credibility

¶ 52 We first address the prosecutor's statements about the credibility of witnesses' testimony.

¶ 53 "It is improper for a prosecutor to interject his or her personal beliefs as to the veracity of witness testimony, ... but prosecutors may properly argue inferences, anchored in evidence, about the truthfulness of a witness' testimony." *People v. Davis*, 312 P.3d 193, 201 (Colo. App. 2010) (citing *Domingo–Gomez v. People*, 125 P.3d 1043, 1048–51 (Colo. 2005)).

¶ 54 Nerud contends that the following statements during the prosecutor's closing and rebuttal arguments were improper:

And I would assert that [the first victim] is credible, because if he was going to confabulate, if you're going to make up something, like the amount of money that was taken, why not say you had a watch that was taken. Why not say something else.

He was very careful to say that his other personal property besides the money was not taken. That's one of the reasons he's credible.

... The issue of whether the lockers were locked is not dispositive, I submit, on the basis of the definitions as to whether this is a third degree burglary. I believe that if, as I submit, you should believe what was stated by those two witnesses, [the first two victims], that there, clearly, is a third-degree burglary; that they put locks on those lockers.

... Now, [the manager]—and the evidence is clear that there were—there was language that talked about not locking—not putting valuables in there, but [the manager] was also honest about that. That's for civil liability for the 24 Hour Fitness.

... Let's take a look at this. For the defendant's assertion that these were not locked to be true, that none of them were locked, you would have to find both [of the victims] incredible, and I submit to you that that is not the way this would happen. When he talks about them, perhaps, making a mistake, I submit that their testimony was believable and compelling; that these were, in fact, locked.

... [Defense] Counsel has stated that he believes these witnesses told the truth, but then he has said that they, perhaps, made a mistake about this. You would have to find both of them incredible to find the defendant not guilty of the two third-degree burglaries.

¶ 55 Viewing these statements in context, we conclude that the statements were anchored in the evidence presented at trial and reasonable inferences that could be drawn from that evidence. In each instance, the prosecutor offered specific reasons based on evidence rather than personal opinion to explain why the testimony of these witnesses was credible. Thus, we discern no improper conduct with respect to any of these statements.

**B. Statements about Drug Paraphernalia**

¶ 56 We next address the prosecutor's comments about drug paraphernalia found in Nerud's backpack.

¶ 57 A prosecutor may argue the facts in evidence and reasonable inferences drawn from those facts. *People v. Munoz–Casteneda*, 2012 COA 109, ¶ 20, 300 P.3d 944. However, it is improper for a prosecutor to use arguments "calculated to inflame the passions and prejudices of the jury." *Id.* A prosecutor also "should refrain from injecting irrelevant issues into the trial by making arguments that would divert the jury from deciding the case based on the evidence." *Id.*

¶ 58 Here, a police officer testified that he found syringes, a spoon, and a scale in Nerud's backpack after his arrest. Nerud did not object to the admission of this testimony.[1] In rebuttal closing argument, the prosecutor referred back to this evidence by stating:

> The fact that the defendant has syringes, a scale, and a spoon, without making further argument about it, clearly provides motivation in terms of the defendant and his desire to get ill-gotten money.

¶ 59 We conclude that, even if this comment on testimony previously admitted without objection was improper, it did not rise to the level of plain error. Nerud admitted to stealing the money, and the prosecutor's statement was unrelated to the contested issue of whether the lockers were locked. The comment was a single isolated reference to evidence admitted at trial, and it did not draw a contemporaneous objection from the defense. *See Domingo–Gomez*, 125 P.3d at 1054 ("The lack of an objection may demonstrate the defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging." (internal quotation marks omitted)). Under these circumstances, the prosecutor's statement did not constitute plain error.

**VII. Conclusion**

¶ 60 The judgment is affirmed.

---

1. Defense counsel did object when the prosecutor asked the police officer what "the signifi-cance of a scale" was, and the court sustained the objection.

Sternberg * and Vogt*, JJ., concur.