2017 CO 41M

**COLORADO DEPARTMENT OF REVENUE and Barbara J. Brohl, in her official capacity as Executive Director of the Colorado Department of Revenue, Petitioners,**

v.

**CREAGER MERCANTILE CO., INC., Respondent.**

**Supreme Court Case No. 15SC226**

Supreme Court of Colorado.

May 15, 2017

As Modified on Denial of Rehearing
June 19, 2017

Attorneys for Petitioners: Cynthia H. Coffman, Attorney General, Frederick R. Yarger, Solicitor General, Robert H. Dodd, Jr., Senior Assistant Attorney General, Denver, Colorado

Attorneys for Respondent: Edward Dale Parrish, LLC, Edward Dale Parrish, James W. Noland, Golden, Colorado, Blain Myhre LLC, Blain D. Myhre, Englewood, Colorado

Attorneys for Amicus Curiae McLane/Western, Inc.: Morrison & Foerster LLP, Scott F. Llewellyn, Nicole K. Serfoss, Denver, Colorado

JUSTICE MÁRQUEZ delivered the Opinion of the Court.

¶1 Creager Mercantile Co., Inc., a wholesale distributor of groceries and tobacco products, sells Blunt Wraps, a type of cigar wrapper made of thirty to forty-eight percent tobacco. Blunt Wraps are designed to be filled with additional tobacco or marijuana and then smoked. We are asked to decide whether Blunt Wraps may be taxed as "tobacco products," as that term is defined in section 39-28.5-101(5), C.R.S. (2016). Because Blunt Wraps are a "kind" or "form" of tobacco, and are "prepared in such manner as to be suitable ... for smoking," we hold that Blunt Wraps fall within the plain language of the definition of "tobacco products" under section 39-28.5-101(5) and are taxable accordingly. We therefore reverse and remand to the court of appeals to address Creager's remaining contentions on appeal.

## I.  Facts and Procedural History

¶2 The State of Colorado's tobacco products tax has two components. The first component is a statutory tax enacted in 1986 that levies a tax of "twenty percent of the manufacturer's list price" on the sale, use, consumption, handling, or distribution of "all tobacco products" in Colorado. § 39-28.5-102(1), C.R.S. (2016). This tax is imposed when a distributor brings or ships tobacco products into Colorado, or manufactures tobacco products in Colorado for sale in this state. Id. The second component is derived from Amendment 35, which voters adopted in 2004. Colo. Const. art. X, § 21. The statute implementing this constitutional amendment levies another tax of twenty percent on tobacco products "in addition to the tax levied pursuant to section 39-28.5-102." § 39-28.5-102.5, C.R.S. (2016).

¶3 Both components of the tax rely on the definition of "tobacco products" in section 39-28.5-101, which, with the exception of cigarettes, broadly includes various kinds and forms of tobacco that can be chewed or smoked "in a pipe or otherwise":

cigars, cheroots, stogies, periques, granulated, plug cut, crimp cut, ready rubbed, and other smoking tobacco, snuff, snuff flour, cavendish, plug and twist tobacco, fine-cut and other chewing tobaccos, shorts, refuse scraps, clippings, cuttings and sweepings of tobacco, and other kinds and forms of tobacco, prepared in such manner as to be suitable for chewing or for smoking in a pipe or otherwise, or both for chewing and smoking, but does not include cigarettes which are taxed separately.

§ 39-28.5-101(5) (emphasis added).

¶4 Blunt Wraps did not exist when section 39-28.5-101 was enacted in 1986. The product evolved from rolling papers used to make roll-your-own cigars and cigarettes. Traditional rolling papers are sold in a sheath of small, dry papers that are folded together in a pop-up packet and can be pulled out one-by-one. In contrast to traditional rolling papers, Blunt Wraps are made from pulverized, homogenized tobacco leaves mixed with vegetable gum, and contain between thirty and forty-eight percent tobacco.

¶5 Blunt Wraps are packaged moist and are individually wrapped around a plastic straw in a sealed container. Before use, the straw is removed from the Blunt Wrap, leaving a pre-formed, small, hollow cigar shell. Like traditional rolling papers, Blunt Wraps are designed to be filled with tobacco, marijuana, or other smoking material and smoked. See generally Redman, How to Roll A Blunt, on Whut? Thee Album (Columbia Records 1992). When smoked, the Blunt Wrap is consumed along with the additional tobacco or other smoking material.

¶6 Blunt Wraps are marketed to consumers as "all natural tobacco wraps" and are patented as a tobacco product; the patent description summarizes their production and intended use:

Wrapping moistened tobacco leaves around a cylindrical form casing forms the shell. The leaves are allowed to dry, and the shell is ready for sale to a consumer. After the form casing is removed, the consumer can fill the shell with a favorite blend of tobacco.

In one of the embodiments, a longitudinal slit is formed through a wall of the shell to allow prying open of the shell body and removal of the form casing. After crushed tobacco leaves are deposited into the cen-

tral opening of the shell, the edges of the slit are moistened and brought together to seal the slit. A cigar is ready for smoking. U.S. Patent No. 6,321,755 (filed Dec. 7, 1999).

¶7 Creager began distributing Blunt Wraps in 2003. The Colorado Department of Revenue ("the Department") audited Creager in early 2004 for the 2001–2003 tax period, but levied no tax assessment against Creager for selling Blunt Wraps.

¶8 In 2006, in response to several taxpayer inquiries, a unit at the Department construed section 39-28.5-101(5) to include products that contain any amount of tobacco. The Department issued a notice called an "FYI" to inform distributors of tobacco products of this interpretation of the statute.[1]

¶9 In 2007, the Department audited Creager for the 2004–2006 tax period and issued an assessment and notice of deficiency, asserting that Creager had failed to collect tobacco products tax on the sales of Blunt Wraps during that period. Creager protested the results of the Department's audit, arguing that Blunt Wraps do not meet the statutory definition of tobacco products.

¶10 Following a hearing, the Department issued a final determination concluding that Blunt Wraps are "tobacco products" under the definition in section 39-28.5-101(5). The Department's final determination imposed a tax assessment, penalties, and interest against Creager.

¶11 Creager appealed to the district court, which conducted a trial de novo. The district court affirmed the tax assessment but reversed the imposition of penalties and interest.[2] The court held that Blunt Wraps are taxable "tobacco products" under section 39-28.5-101(5). It reasoned that under the plain language of that provision, a tobacco product is: (1) a kind or form of tobacco; and (2) prepared in a manner as to be suitable for chewing or for smoking in a pipe or otherwise. The court concluded that Blunt Wraps satisfy both requirements because they "are

a kind or form of tobacco" and "are designed to be filled with tobacco, rolled, sealed, and smoked." The court rejected Creager's argument that Blunt Wraps do not meet the definition of "tobacco products" because they are not capable of being smoked "independently" or "on their own." The court explained that Creager's suggested reading of section 39-28.5-101(5) would require the court to add language to the statute.

¶12 The court of appeals reversed, concluding that Blunt Wraps are not "tobacco products" within the meaning of section 39-28.5-101(5), because, although they contain tobacco, "they are not particularly well adapted or appropriate for smoking on their own." Creager Mercantile Co., Inc. v. Colo. Dep't of Revenue, 2015 COA 10, ¶ 11, —— P.3d —— (emphasis added).

¶13 The court reasoned that the statute is ambiguous because it is unclear whether the legislature intended products like Blunt Wraps to be subject to the tax. Id. at ¶ 12. On one hand, the court observed, Blunt Wraps are a form of tobacco "suitable for smoking" in some circumstances (namely, when wrapped around other smoking material). Id. On the other hand, if Blunt Wraps are taxable "tobacco products," then so are all products that contain any amount of consumable tobacco. Id. Yet, the court of appeals reasoned, if this was the legislature's intent, it could have said so. Id. The court concluded that to read the statute so expansively would render the bulk of its language superfluous. Id.

¶14 To resolve the ambiguity, the court invoked various principles of statutory interpretation and concluded that Blunt Wraps are not "tobacco products" within the meaning of section 39-28.5-101(5). Id. at ¶¶ 13–18. First, it invoked the principle that, in interpreting ambiguous tax statutes, courts resolve doubts in favor of the taxpayer. Id. at ¶ 14 (citing Bd. of Cty. Comm'rs v. Exxon-Mobil Oil Corp., 192 P.3d 582, 586 (Colo.App.

---

**1.** While this case was pending before the court of appeals in 2014, the Department formally adopted a regulation further defining a "tobacco product" as "any product that is made, in whole or in part, of tobacco," including "wrapping material, sometimes referred to as a blunt wrap."

Dep't of Revenue Reg. 39-28.5-101(5), 1 Code Colo. Regs. § 201-7 (2016).

**2.** The district court's ruling on penalties and interest is not before us in this appeal.

2008)); see also Douglas Cty. Bd. of Equalization v. Fid. Castle Pines, Ltd., 890 P.2d 119, 125 (Colo.1995) ("Generally, we interpret ambiguous tax statutes in favor of the taxpayer."). Second, it applied the principle of ejusdem generis and concluded that the statutory phrase "other kinds and forms of tobacco, prepared in such manner as to be suitable for chewing or for smoking in a pipe or otherwise" includes only products that are a "focus of consumption." Id. at ¶¶ 15–16. The court reasoned that Blunt Wraps are not a focus of consumption because they are "only suitable for consuming other products." Id. at ¶ 16. Third, the court of appeals considered how the term "tobacco products" is defined in the criminal code. The court noted that originally both the tax code and the criminal code used the same definition of "tobacco products," but over time, the legislature expanded the criminal code definition of the term, whereas the tax code definition remained unchanged. Id. at ¶ 17. The court thus concluded that the term "tobacco products" has a narrower meaning in the tax context than in the criminal code. Id.

¶15 We granted the Department's petition for a writ of certiorari to review the court of appeals' ruling and now reverse.

## II. Standard of Review

■■■ ¶16 We review questions of statutory construction de novo. Colo. Dep't of Revenue v. Hibbs, 122 P.3d 999, 1002 (Colo.2005). When construing a statute, we must ascertain and give effect to the intent of the General Assembly. State v. Nieto, 993 P.2d 493, 500 (Colo.2000). To determine legislative intent, we look first to the plain language of the statute. Id.; Colo. Motor Vehicle Dealer Bd. v. Freeman, 2016 CO 44, ¶ 8, 375 P.3d 111, 113. When the statutory language is clear and unambiguous, "we look no further and apply the words as written." Freeman, ¶ 8; see also People v. Zapotocky, 869 P.2d

1234, 1238 (Colo.1994) ("When the statutory language is clear and unambiguous, the statute must be interpreted as written without resort to interpretive rules and statutory construction.").

## III. Analysis

■■■ ¶17 The question before us is whether Blunt Wraps may be taxed as "tobacco products," as that term is defined in section 39-28.5-101(5). Because Blunt Wraps are a "kind" or "form" of tobacco, and are "prepared in such manner as to be suitable ... for smoking," we hold that Blunt Wraps fall within the plain language of the definition of "tobacco products" under section 39-28.5-101(5) and are therefore subject to taxation.

¶18 Section 39-28.5-101(5) lists a broad variety of "tobacco products." First, the statute describes various forms of both smoking and smokeless tobaccos, namely, "cigars, cheroots,[3] stogies,[4] periques,[5] granulated, plug cut, crimp cut, ready rubbed, and other smoking tobacco," as well as "snuff, snuff flour, cavendish, plug and twist tobacco, fine-cut and other chewing tobaccos." § 39-28.5-101(5). Next, the statute describes various forms of tobacco scraps, such as "shorts, refuse scraps, clippings, cuttings and sweepings of tobacco." Id. Finally, and relevant here, the statute includes a catchall category of other tobacco that can be chewed or smoked or both. This final, catchall category encompasses "other kinds and forms of tobacco, prepared in such manner as to be suitable for chewing or for smoking in a pipe or otherwise, or both for chewing and smoking." Id. (emphases added).

¶19 The question here is whether Blunt Wraps are encompassed by the final, catchall category. We conclude that they are.

¶20 The language used to define this catchall category is particularly expansive. The phrase "other kinds and forms of tobacco" does not limit the type or character of the

---

3. A cheroot is "a cigar cut off square at both ends." Webster's Third New International Dictionary (2002).

4. A stogie is "an inexpensive though not necessarily inferior cigar made in the form of a slender cylindrical roll." Webster's Third New International Dictionary (2002).

5. A perique is "a strong-flavored tobacco with tough and gummy fiber raised in St. James parish, Louisiana, cured in its own juices, and used chiefly in smoking mixtures." Webster's Third New International Dictionary (2002).

product, so long as it is tobacco. The tobacco must be "prepared in such manner as to be suitable ... for smoking in a pipe or otherwise." Id. (emphasis added). Notably, the language of this category also does not limit how the product must be smoked, so long as it is suitable for consumption by smoking. In sum, the plain language of the catchall category requires a product to be (1) a "kind" or "form" of tobacco; and (2) prepared in a manner as to be "suitable" for chewing or for "smoking in a pipe or otherwise."

¶21 Blunt Wraps satisfy both of these requirements. First, the parties agree that Blunt Wraps are a "kind" or "form" of tobacco consisting of pulverized, homogenized tobacco leaves and containing thirty to forty-eight percent tobacco. Indeed, as described above, they are patented and marketed to consumers as tobacco products.

¶22 Second, Blunt Wraps are prepared in a manner as to be suitable for smoking. The parties agree that Blunt Wraps are designed and intended to be filled with tobacco, marijuana, or other smoking material and smoked. (In fact, there appears to be no reasonable use for Blunt Wraps other than smoking.)

¶23 Importantly, Blunt Wraps are not merely a delivery mechanism for tobacco or other smoking materials, like a pipe, a vape pen, a hookah, or a bong. In contrast to such paraphernalia, Blunt Wraps are consumed as they are smoked. The fact that Blunt Wraps are combined with additional tobacco or other smoking material does not change the fact that the tobacco in the Blunt Wrap itself is also consumed by the act of smoking. That is, each inhalation from a Blunt Wrap burns and delivers additional tobacco in the Blunt Wrap itself to the user. Thus, we conclude that Blunt Wraps are prepared in a manner as to be "suitable ... for smoking."

¶24 In sum, we conclude that Blunt Wraps fall within the plain language of the definition of "tobacco products" in section 39-28.5-101(5). And because we reach this conclusion based on the plain language of the provision, we need not resort to other rules of statutory interpretation.

¶25 The court of appeals erred in concluding that Blunt Wraps are not tobacco products under section 39-28.5-101(5) because "Blunt Wraps ... are not particularly well adapted or appropriate for smoking on their own." Creager, ¶ 11 (emphasis added). First, the court of appeals' construction grafts additional language onto the statute. Nothing in the statutory definition of "tobacco products" requires the product to be capable of being smoked "on its own." We will not substitute or add words to statutes. Colo. Dep't of Labor & Emp't v. Esser, 30 P.3d 189, 196 (Colo.2001). Second, the court of appeals' narrow reading of section 39-28.5-101(5) also ignores that a form of tobacco is "suitable" for smoking if it can be smoked "in a pipe or otherwise." § 39-28.5-101(5) (emphasis added). As discussed above, the broad language of the catchall category does not limit how a product must be smoked. Third, the definition of "tobacco products" in the criminal code does not illuminate the scope of the definition in the tax code. Both definitions are broad. But nothing in the criminal code definition (or the tax code definition) compels the conclusion that a tobacco product must be capable of being smoked "on its own." Finally, the court of appeals' opinion overlooks the reality that several of the tobacco products enumerated in section 39-28.5-101(5) also cannot be smoked on their own. Loose tobacco products, such as "refuse scraps, clippings, cuttings and sweepings of tobacco," id., must be combined with another product or with paraphernalia, such as a pipe, before they can be smoked. The court of appeals' narrow interpretation would exclude specifically enumerated forms of loose tobacco from the definition of tobacco products, contrary to legislative intent.

¶26 The court of appeals interpreted section 39-28.5-101(5)'s catchall category—"other kinds and forms of tobacco, prepared in such manner as to be suitable for chewing or for smoking in a pipe or otherwise"—"to apply only to those things that share the characteristics of the items listed in the statute." Creager, ¶ 16. The court determined that the shared characteristic of the listed tobacco products is that "[e]ach ... is a focus of consumption." Id. (emphasis added). It reasoned that because Blunt Wraps "are only

suitable for consuming other products," they "do not fall within the same class as the items listed in the statute." Id. We disagree. No statutory language supports the conclusion that the shared characteristic of the tobacco products listed is that each is "a focus of consumption." Rather, as explained above, the catchall category requires a tobacco product to be simply: (1) a "kind" or "form" of tobacco; and (2) prepared in a manner as to be "suitable" for chewing or for "smoking in a pipe or otherwise." Blunt Wraps are: (1) a "kind" or "form" of tobacco; and (2) prepared in a manner as to be suitable for smoking. Therefore, they fall within the language of the catchall category of section 39-28.5-101(5).

¶27 In any event, as discussed above, Blunt Wraps are, in fact, consumed by smoking. Indeed, smokers presumably buy Blunt Wraps—in lieu of traditional, tobacco-free rolling papers—because they prefer to consume the additional tobacco contained in a Blunt Wrap.

¶28 For these reasons, the court of appeals erred in concluding that Blunt Wraps are not "tobacco products" under section 39-28.5-101(5).

## IV. Conclusion

¶29 To wrap up: because they are a "kind" or "form" of tobacco, and are "prepared in such manner as to be suitable . . . for smoking," we hold that Blunt Wraps fall within the plain language of the definition of "tobacco products" under section 39-28.5-101(5) and are therefore subject to taxation. Accordingly, we reverse and remand to the court of appeals to address Creager's remaining contentions on appeal.

CHIEF JUSTICE RICE dissents, and JUSTICE EID and JUSTICE GABRIEL join in the dissent.

CHIEF JUSTICE RICE, dissenting.

¶30 Applying what it views to be the plain language of section 39-28.5-101(5), C.R.S. (2016), the majority concludes that Creager's Blunt Wraps are "tobacco products" and that Creager is therefore liable for certain taxes due on tobacco products. Maj. op. ¶ 17. In my view, however, section 39-28.5-101(5) is ambiguous and Blunt Wraps are not taxable "tobacco products" within the meaning of the statute. Accordingly, I respectfully dissent.

## I. Analysis

¶31 I begin by noting the applicable principles of statutory interpretation. I then consider whether section 39-28.5-101(5) is ambiguous, and I conclude that it is. From there, I determine that Blunt Wraps are not "tobacco products" as defined in section 39-28.5-101(5) for two reasons: (1) tax statutes must be construed in favor of the taxpayer; and (2) the canon of ejusdem generis excludes Blunt Wraps from the scope of section 39-28.5-101(5).

## A. Principles of Statutory Interpretation

¶32 In interpreting a statute, "our primary objective is to ascertain and effectuate the intent of the General Assembly." Specialty Rests. Corp. v. Nelson, 231 P.3d 393, 397 (Colo.2010). To discern this intent, we interpret statutory terms "in accordance with their plain and ordinary meaning." Aetna Cas. & Sur. Co. v. McMichael, 906 P.2d 92, 97 (Colo.1995). In the absence of ambiguity, we apply the statute's language as written. Denver Post Corp. v. Ritter, 255 P.3d 1083, 1089 (Colo.2011). If the statute is ambiguous, we may consider rules of statutory interpretation to determine the General Assembly's intent. Id. A statute is ambiguous "where the words chosen by the legislature are unclear in their common understanding, or capable of two or more constructions leading to different results." State v. Nieto, 993 P.2d 493, 500 (Colo.2000).

## B. Section 39-28.5-101(5) Is Ambiguous

¶33 Section 39-28.5-102, C.R.S. (2016), levies a tax on "tobacco products," and section 39-28.5-101(5) defines which "tobacco products" are subject to the tax. Section 39-28.5-101(5) does not state that any product containing tobacco is taxable. Instead, after listing specific types of tobacco-containing products subject to taxation as "tobacco products," this section then defines the general category of products that are also subject to the tax as "other kinds and forms of

tobacco" that are "prepared in such a manner as to be suitable for chewing or for smoking in a pipe or otherwise, or both for chewing and smoking." As discussed by the majority, this case turns on whether or not Blunt Wraps are "prepared in such a manner as to be suitable for chewing or for smoking in a pipe or otherwise." See maj. op. ¶ 19.

¶34 Blunt Wraps are made partially out of tobacco, but cannot be smoked on their own. Notably, at trial, the district court witnessed an unsuccessful attempt to smoke a Blunt Wrap in a pipe. The district court then concluded that "Blunt Wraps are a wrapping for roll-your-own cigars/cigarettes. Blunt Wraps are designed to be filled with tobacco, rolled, sealed and then smoked" (emphasis added). Ultimately, the undisputed evidence in this case showed that, like other forms of rolling papers, Blunt Wraps are a means for delivering tobacco that is to be smoked. The Colorado Department of Revenue also recognizes that Blunt Wraps must be combined with another product in order to be smoked.

¶35 Under section 39-28.5-101(5), it is unclear if products such as Blunt Wraps, which cannot be smoked on their own are "suitable for smoking." Given this lack of clarity, the statutory language could be reasonably construed as the majority understood it—that "prepared in a manner as to be suitable for ... smoking in a pipe or otherwise" only requires that Blunt Wraps be capable of being lit and that they be fully consumed while a user is smoking tobacco wrapped inside of them. See maj. op. ¶ 23. Under this view, nothing in the statute disqualifies a tobacco-containing product simply because it must be used in conjunction with another product.

¶36 Alternatively, one can reasonably construe the language "prepared in a manner as to be suitable for ... smoking in a pipe or otherwise" to require that Blunt Wraps must be capable of being smoked on their own. Under this logic, "prepared" connotes an intention to make something ready for a particular purpose. See Prepare, Webster's Third New International Dictionary (unabr. ed. 2002) (defining "prepare" as "to make ready beforehand for some purpose: put into condi-

tion for a particular use, application, or disposition"). "[S]uitable" means "adapted to a use or purpose." Suitable, Webster's Third New International Dictionary (unabr. ed. 2002). And "smoking" is defined as "inhal[ing] and exhal[ing] the fumes of tobacco from a pipe, cigar, or cigarette." Smoking, Webster's Third New International Dictionary (unabr. ed. 2002). Accordingly, applying these definitions here, "prepared in a manner as to be suitable for ... smoking in a pipe or otherwise" requires an intent to make Blunt Wraps ready for use on their own in a pipe or otherwise for the purpose of inhaling and exhaling tobacco fumes.

¶37 Given these two reasonable, competing interpretations, section 39-28.5-101(5) is ambiguous. See Nieto, 993 P.2d 493 at 500.

¶38 Moreover, while this case was pending in the court of appeals, the Colorado Department of Revenue amended its regulatory definition of taxable tobacco products to specifically include Blunt Wraps. See Dep't of Revenue Reg. 201-7, 1 Code Colo. Regs. 201-7:39-28.5-101(5). This suggests that it too acknowledged that section 39-28.5-101(5) is ambiguous as applied to Blunt Wraps.

### C. Blunt Wraps Are Not "Tobacco Products"

¶39 Reviewing courts must construe taxation statutes narrowly in favor of the taxpayer. City of Boulder v. Leanin' Tree, Inc., 72 P.3d 361, 367 (Colo.2003) (holding that in interpreting tax provisions, courts must construe all doubts against the government and in favor of the taxpayer); Bd. of Cty. Comm'rs of Rio Blanco v. ExxonMobil Oil Corp., 192 P.3d 582, 586 (Colo.App.2008) ("When interpreting tax statutes, a court should not view the power to impose taxes expansively, and should resolve doubts in favor of the taxpayer."), aff'd, 222 P.3d 303 (Colo.2009). As this court has held, tax provisions "will not be extended beyond the clear import of the language used, nor will their operation be extended by analogy." Leanin' Tree, 72 P.3d at 367 (quoting Transponder Corp. v. Prop. Tax Admin., 681 P.2d 499, 504 (Colo.1984)). Thus, we should resolve any doubt about the statute's reach in Creager's favor. Accordingly, I would determine that

Blunt Wraps are not "tobacco products" as defined in section 39-28.5-101(5).

¶40 Moreover, I agree with the court of appeals that the principle of ejusdem generis mandates that the catch-all in section 39-28.5-101(5)—"other kinds and forms of tobacco, prepared in such manner as to be suitable for chewing or for smoking in a pipe or otherwise"—cannot include Blunt Wraps. See Creager Mercantile Co., Inc. v. Colo. Dep't of Revenue, 2015 COA 10, ¶ 16, —— P.3d ——. Under ejusdem generis, "where a general term follows a list of things in a statute . . . the general terms are applied only to those things of the same general kind or class as those specifically mentioned." Winter v. People, 126 P.3d 192, 195 (Colo.2006) (concluding that the phrase "other apparatus or equipment" applied only to those things that share the characteristics of the items listed in the statute); Davidson v. Sandstrom, 83 P.3d 648, 656 (Colo.2004) ("[W]hen a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed.") (quoting Ejusdem Generis, Black's Law Dictionary, (7th ed. 1999))).

¶41 Each of the products specifically enumerated in section 39-28.5-101(5) can be smoked or chewed on their own. Although there is disagreement whether "sweepings" can be independently smoked or chewed, they can be placed in a pipe or rolling paper and smoked. Blunt Wraps, however, cannot be smoked by placing them in a pipe, as the district court witnessed. Rather, Blunt Wraps are akin to the pipe or rolling paper—they are the delivery vessel for the tobacco, marijuana, or other consumable product. Thus, all of the enumerated products in the list are capable of being consumed on their own, whereas Blunt Wraps are not. Therefore, the principle of ejusdem generis excludes them from the scope of section 39-28.5-101(5).

## II. Conclusion

¶42 For these reasons, I would conclude that Blunt Wraps may not be taxed as "tobacco products" as that term is defined in section 39-28.5-101(5). Accordingly, I would

affirm the judgment of the court of appeals. I therefore respectfully dissent.

I am authorized to state that JUSTICE EID and JUSTICE GABRIEL join in this dissent.